**In re INDIVIDUAL 35W BRIDGE LITIGATION.**

Nos. A09–1776, A09–1778.

Court of Appeals of Minnesota.

Aug. 24, 2010.

Jocelyn L. Knoll, Gregory M. Weyandt, Eric A.O. Ruzicka, Colin Wicker, Dorsey & Whitney LLP, Minneapolis, MN, for respondent URS Corporation.

Theodore V. Roberts, Fabyanske, Westra, Hart & Thomson, P.A., Minneapolis, MN, for respondent Progressive Contractors Incorporated.

Richard J. Nygaard, Courtney Lawrence, Schwebel, Goetz & Sieben, P.A., Minneapolis, MN, for respondent Michael Weese and Kimberly Weese.

Kirk O. Kolbo, David F. Herr, James Duffy, Keiko L. Sugisaka, Minneapolis, MN, for appellant Jacobs Engineering Group, Inc.

Kristyn M. Anderson, Al Gilbert, St. Paul, MN, for respondent Minnesota Department of Transportation.

Considered and decided by PETERSON, Presiding Judge; LANSING, Judge; and STAUBER, Judge.

## OPINION

PETERSON, Judge.

This appeal is from an order denying appellant's motion to dismiss respondent's third-party complaint for contribution and indemnity for failure to state a claim on which relief can be granted. We reverse.

## FACTS

In 1962, the State of Minnesota entered into a contract with the engineering firm Sverdrup & Parcel and Associates, Inc. (Sverdrup) to design a bridge to carry Interstate Highway 35W across the Mississippi River. Construction of the bridge was completed in 1967. Through a series of name changes and mergers, appellant Jacobs Engineering Group Inc. (Jacobs) became Sverdrup's successor in interest.

In 2003, the Minnesota Department of Transportation (MnDOT) contracted with respondent URS Corporation (URS) to inspect the I–35W bridge and recommend repairs. In 2007, MnDOT contracted with Progressive Contractors Incorporated (PCI) to repair the bridge. The repair project began in June 2007 and was scheduled to be completed in September 2007.

On August 1, 2007, the bridge collapsed. Thirteen people were killed and more than 100 people were injured in the collapse. More than 100 separate actions seeking damages arising from the bridge collapse were filed in state district court. The plaintiffs sued URS and PCI for negligence and breach of contract. The district court dismissed the plaintiffs' breach-of-contract claims. URS and PCI then brought third-party actions for contribution and indemnity against Jacobs, claiming that Sverdrup negligently designed the bridge.[1]

Jacobs moved under Minn. R. Civ. P. 12.02(e) to dismiss URS's third-party action for failure to state a claim upon which relief can be granted. The district court denied the motion. Because a series of consolidations in the district court had grouped the plaintiffs' cases into different categories and Jacobs filed motions to dis-

---

1. Because PCI has fully settled the claims against it and has advised this court that it will not be defending against any of the appeals that are before this court, we will not address PCI's additional participation in the district court proceedings.

miss in two of the categories, Jacobs filed two separate notices of appeal. This court consolidated the two appeals and determined that the order denying the motion to dismiss is immediately appealable because Jacobs' motion to dismiss was immunity based and an order denying an immunity-based motion to dismiss is effectively unreviewable on appeal from a final judgment because it is a denial of a right not to stand trial—a right that is lost if the case is permitted to proceed.

## ISSUES

1. Is Jacobs entitled to dismissal of the third-party claim for contribution?
2. Is Jacobs entitled to dismissal of the third-party claim for indemnity?

## ANALYSIS

■ When reviewing a decision on a motion to dismiss pursuant to Minn. R. Civ. P. 12.02(e) for failure to state a claim on which relief can be granted, the question before this court is whether the complaint sets forth a legally sufficient claim for relief. *Hebert v. City of Fifty Lakes,* 744 N.W.2d 226, 229 (Minn.2008) (citing *Barton v. Moore,* 558 N.W.2d 746, 749 (Minn.1997)). "The reviewing court must consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Bodah v. Lakeville Motor Express, Inc.,* 663 N.W.2d 550, 553 (Minn.2003) (citing *Marquette Nat'l Bank v. Norris,* 270 N.W.2d 290, 292 (Minn.1978)). "The standard of review is therefore de novo." *Id.* "Statutory construction is ... a legal issue reviewed de novo." *Lee v. Fresenius Med. Care, Inc.,* 741 N.W.2d 117, 122 (Minn.2007). "We construe statutes to effect their essential purpose but will not disregard a statute's clear language to pursue the spirit of the law." *Id.* at 123.

## Contribution

Jacobs argues that it is entitled to dismissal of the third-party claim for contribution because an essential element of the claim is that Jacobs and URS must share a common liability to the plaintiffs and the statute of repose in Minn.Stat. § 541.051, subd. 1(a) (Supp.2007), precludes common liability. We agree.

■ The Minnesota Supreme Court long ago declared that "[t]he very essence of the action of contribution is 'common liability.'" *American Auto. Ins. Co. v. Molling,* 239 Minn. 74, 76, 57 N.W.2d 847, 849 (1953). The supreme court explained in *Molling* that the doctrine of contribution applies when several persons are under a common liability to another and equity distributes the burden among the several obligors in proportion to their respective shares. *Id.* at 77, 57 N.W.2d at 850. When one of the several obligors satisfies the obligation that would otherwise fall on all of them, the rest are required to contribute to reimburse the one to the extent that he has discharged the obligation in excess of what could justly be claimed from him. *Id.* The reason why contribution is required under these circumstances is that one obligor has satisfied an obligation of the others. "It was the benefit of being relieved of an obligation on which equity based the duty to contribute." *Id.* at 78, 57 N.W.2d at 850 (quotation omitted).

The supreme court explained further:

Thus, it has been emphasized that it is the actual discharging of the obligation so as to release the other party from an obligation that gives rise to the right to contribution. Without a legally enforceable obligation on the part of defendant in the contribution action there can, of course, be no such release.

*Id.* at 82, 57 N.W.2d at 852 (citations omitted). Consequently, there is no right to contribution when there is no common liability.

The supreme court more recently reaffirmed this principle when it stated: "Although we are aware that the requirement of common liability has been criticized, we have not eliminated it. We impose this requirement because we believe that only a tortfeasor who is liable for a plaintiff's loss should be required to contribute to the payment for that loss." *Hart v. Cessna Aircraft Co.,* 276 N.W.2d 166, 168–69 (Minn.1979); *see also Jones v. Fisher,* 309 N.W.2d 726, 728 (Minn.1981) ("Two requirements must be met before contribution may be obtained: 'First, the co-tortfeasors must be under a common liability to the injured party. Second, the co-tortfeasors claiming contribution must have paid a disproportionate share of the judgment.'" (quoting Note, *Contribution & Indemnity—An Examination of the Upheaval in Minnesota Tort Loss Allocation Concepts,* 5 Wm. Mitchell L.Rev. 109, 125 (1979))).

The statute that governs actions for damages arising out of the defective and unsafe condition of an improvement to real property states:

(a) Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury, *nor in any event shall such a cause of action accrue more than ten years after substantial completion of the construction.* Date of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner or the owner's representative can occupy or use the improvement for the intended purpose.

(b) Notwithstanding paragraph (a), an action for contribution or indemnity arising out of the defective and unsafe condition of an improvement to real property may be brought no later than two years after the cause of action for contribution or indemnity has accrued, regardless of whether it accrued before or after the ten-year period referenced in paragraph (a).

(c) For purposes of paragraph (a), a cause of action accrues upon discovery of the injury; provided, however, that in the case of an action for contribution or indemnity under paragraph (b), a cause of action accrues upon the earlier of commencement of the action against the party seeking contribution or indemnity, or payment of a final judgment, arbitration award, or settlement arising out of the defective and unsafe condition.

Minn.Stat. § 541.051, subd. 1 (Supp.2007) (emphasis added).

■ The supreme court has described the language emphasized above in Minn. Stat. § 541.051, subd. 1(a), as a statute of repose that "is designed to eliminate suits against architects, designers and contractors who have completed the work, turned the improvement to real property over to the owners, and no longer have any interest or control in it." *Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448, 454 (Minn. 1988). The supreme court has explained:

[A] statute [of repose] is intended to terminate the possibility of liability after a defined period of time, regardless of the potential plaintiff's lack of knowl-

edge of his or her cause of action. Such statutes reflect the legislative conclusion that a point in time arrives beyond which a potential defendant should be immune from liability for past conduct.

*Weston v. McWilliams & Assocs.*, 716 N.W.2d 634, 641 (Minn.2006) (alterations in original) (quoting 51 Am.Jur.2d *Limitation of Actions* § 18 (2000)). "Statutes of repose are intended to give finality to the potential defendant and create 'a substantive right in those protected to be free from liability after the legislatively-determined period of time.'" *Camacho v. Todd & Leiser Homes*, 706 N.W.2d 49, 55 (Minn. 2005) (quoting 54 C.J.S. *Limitations of Actions* § 5 (2005)). In *Camacho*, the supreme court held that a voluntarily dissolved corporation could not be sued for breach of a statutory warranty after the two-year period in a statute of repose passed. *Id.*

■ Like the dissolved corporation in *Camacho*, Jacobs and its predecessors could not be sued for damages arising out of the defective and unsafe condition of the bridge after the ten-year statute-of-repose period in Minn.Stat. § 541.051, subd. 1(a), had passed. Construction of the bridge was substantially completed in 1967, which means that the ten-year repose period ended in 1977 and that Jacobs was free from liability 30 years before the bridge collapsed. Because Jacobs cannot be held liable for damages to the plaintiffs arising out of the bridge collapse, Jacobs and URS do not share a common liability, and any damages that URS pays to victims of the bridge collapse will not relieve Jacobs of any liability. Consequently, URS may not seek contribution from Jacobs.

URS concedes that the ten-year repose period in Minn.Stat. § 541.051, subd. 1(a), barred any direct claim by the plaintiffs against Jacobs, but it argues that its claim for contribution is allowed under Minn. Stat. § 541.051, subd. 1(c), which states

> that in the case of an action for contribution or indemnity under paragraph (b), a cause of action accrues upon the earlier of commencement of the action against the party seeking contribution or indemnity, or payment of a final judgment, arbitration award, or settlement arising out of the defective and unsafe condition.

URS contends that the plaintiffs commenced their first action against URS in November 2008, seeking damages for injuries that arose out of the unsafe and defective condition of the bridge, and, less than two years later, URS brought its contribution claim against Jacobs, which, URS argues, is explicitly allowed under Minn.Stat. § 541.051, subd. 1(b).

But this argument fails to recognize that being able to bring a contribution action within the limitations period described in Minn.Stat. § 541.051, subd. 1(b) and (c), does not, by itself, mean that a cause of action for contribution has accrued.

> A cause of action accrues and the statute of limitations begins to run when the cause of action will survive a motion to dismiss for failure to state a claim upon which relief can be granted. The showing a plaintiff must make in order to survive a motion to dismiss under Minn. R. Civ. P. 12.02(e) is minimal. The plaintiff need only allege sufficient facts to state a claim.

*Noske v. Friedberg*, 670 N.W.2d 740, 742 (Minn.2003) (quotation omitted). A failure to establish any element of a claim defeats the entire claim. *Id.* at 743. With respect to any element, if it is not possible on any evidence that "might be produced, consistent with the pleader's theory, to grant the relief demanded, the claim will be dismissed." *Id.* (quotations omitted).

As we have already explained, common liability is an essential element of a contri-

bution claim. The statement in Minn.Stat. § 541.051, subd. 1(c), that a contribution cause of action accrues upon the commencement of the action against the party seeking contribution does not mean that the cause of action accrues and the two-year statute of limitations in Minn.Stat. § 541.051, subd. 1(b), begins to run even if URS cannot establish every element of the cause of action. For the cause of action to accrue, it must be possible for URS to establish common liability, and, as URS has conceded, the ten-year repose period in Minn.Stat. § 541.051, subd. 1(a), barred any direct claim by the plaintiffs against Jacobs. Therefore, it is not possible for URS to establish common liability with Jacobs, and no cause of action for contribution has accrued.

URS also argues that Jacobs may not rely on Minn.Stat. § 541.051, subd. 1(a), to make its "lack of common liability" argument because Minn.Stat. § 541.051, subd. 1(b), begins with the phrase, "[n]otwithstanding paragraph (a)." URS contends that it is only because of paragraph (a) that Jacobs is able to make the "lack of common liability" argument, and the use of the phrase, "[n]otwithstanding paragraph (a)," in paragraph (b) demonstrates that the legislature decided that paragraph (a) does not prevent contribution claims.

But when paragraphs (a) and (b) are read together, it is apparent that paragraph (a) creates a rule that no cause of action to recover damages for any injury arising out of the defective and unsafe condition of an improvement to real property shall accrue more than ten years after substantial completion of the construction and paragraph (b) creates an exception from this rule. Paragraph (b) permits an action for contribution or indemnity to be brought within a two-year statute-of-limitations period regardless of whether the cause of action accrued before or after the ten-year period referenced in paragraph (a). The phrase, "[n]otwithstanding paragraph (a)," is necessary in paragraph (b) because, without it, the two paragraphs would be inconsistent. The phrase simply acknowledges that paragraph (b) creates an exception from the ten-year rule in paragraph (a); it does not alter the elements of a cause of action for contribution.

■ Finally, URS argues that "Jacobs advances an inaccurate and overly restrictive definition of common liability in Minnesota." URS correctly contends that the supreme court has stated that contribution "is a flexible, equitable remedy designed to accomplish a fair allocation of loss among parties." *Jones,* 309 N.W.2d at 730 n. 4 (quoting *Lambertson v. Cincinnati Corp.,* 312 Minn. 114, 128, 257 N.W.2d 679, 688 (1977)). The supreme court also stated in *Jones*

that defenses that do not go to the merits of a case (such as the name in which a lawsuit is brought) do not extinguish common liability. Any other result is inconsistent with this court's previous decisions allowing contribution notwithstanding defenses such as covenants not to sue, *see Employers Mutual Casualty Co. v. Chicago, St. Paul, Minneapolis & Omaha Railway,* 235 Minn. 304, 50 N.W.2d 689 (1951); the running of a statute of limitations against a co-tortfeasor, *see Gustafson v. Johnson,* 235 Minn. 358, 364, 51 N.W.2d 108, 112 (1952); failure to provide statutory notice to a municipal co-tortfeasor, *see White v. Johnson,* 272 Minn. 363, 372, 137 N.W.2d 674, 680 (1965), *overruled on other grounds* [;] *Tolbert v. Gerber Industries, Inc.,* 255 N.W.2d 362, 367–68 (1977); and failure to provide statutory notice to a dramshop defendant, *see Hammerschmidt v. Moore,* 274 N.W.2d 79 (Minn.1978). In each of these cases this court ruled that contribution could

be sought when common liability was absent solely due to a technical procedural rule.

*Id.* at 729–30.

Also, citing the preceding statement in *Jones,* the supreme court stated:

> Of course, what constitutes "common liability" is not susceptible of a single precise definition. The concept, an element of the equitable remedy of contribution, is accorded some elasticity. Common liability does not depend solely on whether or not a plaintiff can enforce recovery against two or more defendants. We have held that certain technical defenses, defenses that do not go to the merits of the case, do not extinguish common liability even though they eliminate one defendant's direct obligation to compensate the plaintiff. *Jones v. Fisher,* 309 N.W.2d 726, 729 (Minn.1981). In such instances it is a factor extrinsic to the tort itself (e.g., failure to provide statutory notice, covenant not to sue, personal immunity, or the running of the statute of limitations) by which liability is avoided. The acts or omissions of the excused defendant were otherwise sufficient to subject the defendant to liability.

*Horton by Horton v. Orbeth, Inc.,* 342 N.W.2d 112, 114 (Minn.1984) (emphasis omitted).

URS contends that, under these authorities, when determining whether a third-party defendant's defense in the plaintiff's underlying action extinguishes the common liability necessary for contribution, the key issue is whether the defense goes to the merits of the plaintiff's claim. URS concedes that because contribution is an equitable remedy, if a third-party defendant has a complete defense on the merits, a claim for contribution would be inequitable. However, URS argues, Jacobs is the beneficiary of a defense under Minn.Stat.

§ 541.051, subd. 1(a), that is not related to Jacobs' acts, omissions, or culpability, and Jacobs should not be able to use that defense to force URS to pay for Jacobs' mistakes.

Neither *Jones* nor *Horton* fully explains the distinction between a technical defense that does not extinguish common liability and a defense that does extinguish common liability. But one of the opinions that the supreme court cited in *Jones* explained why certain defenses that eliminate a defendant's direct obligation to compensate the plaintiff do not bar a suit for contribution against the defendant. In that opinion, the supreme court stated:

> We have held that a covenant not to sue secured by one wrongdoer does not destroy the common liability necessary for contribution. And the majority of the courts hold that running of the statute of limitations against one defendant on the plaintiff's claim does not bar a suit for contribution against him. *The reasoning underlying these decisions is that joint liability arises the moment the tort is committed and these defenses come into being after the conduct which creates that liability.*

*White,* 272 Minn. at 371, 137 N.W.2d at 679 (citations omitted) (emphasis added).

In *White,* a municipal defendant argued that because none of the plaintiffs served a statutorily required notice of claim for damages, the municipality could not be liable to the plaintiffs, and because the municipality could not be liable to the plaintiffs, it also could not be liable to another tortfeasor for contribution. *Id.* at 365, 137 N.W.2d at 676. The supreme court held that, because there was joint liability between the municipality and the other tortfeasor the moment the tort was committed, the municipality's defense against the plaintiffs, which later came into being when the plaintiffs failed to serve

the required notice, did not defeat the other tortfeasor's right to recover contribution. *Id.* at 371, 137 N.W.2d at 680.

The *White* court distinguished this reasoning from the reasoning in other cases where a joint tortfeasor's personal defense against the plaintiff defeated another tortfeasor's contribution claim. In those cases, the court explained,

> the tortfeasor against whom contribution [was] sought escaped because of a special relationship between himself and the injured plaintiff. For instance, a husband, even though a joint wrongdoer, cannot be required to contribute to the damages of his wife. Nor may a joint tortfeasor father be required to contribute to the damages sustained by his son. . . . Whether the policy of exempting the husband or parent from action by the wife or child is expressed in terms of the absence of common liability to the injured plaintiff or otherwise, the decisive factor is the special relationship which gives rise to the policy.

*Id.* at 369, 137 N.W.2d at 678 (citations omitted). In the cases where a personal defense also defeated a contribution claim, defendants who were found liable to a wife and a stepson could not recover contribution from the wife's husband or the stepson's stepfather because, under the well-established public policy of intrafamily immunity, the wife and the stepson could not bring actions in negligence against the husband or the stepfather. *Molling,* 239 Minn. at 86–87, 57 N.W.2d at 854–55; *London Guarantee & Accident Co. v. Smith,* 242 Minn. 211, 216–17, 64 N.W.2d 781, 785 (1954).[2] Consequently, the husband and the stepfather could not become liable to the injured party, and joint liability did not arise the moment the tort was committed.

Under the reasoning in *White,* a personal defense that is based upon a well-established public policy of immunity may defeat a contribution claim even though the defense is not related to the defendant's acts, omissions, or culpability. The significant difference between an immunity defense and the defenses identified in *Jones,* which did not extinguish common liability, is that an immunity defense applies from the moment a tort is committed and prevents the immune defendant from ever becoming liable, while the beneficiaries of the defenses in *Jones* were potentially liable when the tort was committed, but they escaped liability because of a procedural mechanism that later created a defense.

The ten-year statute of repose in Minn. Stat. § 541.051, subd. 1(a), is a public policy established by the legislature. The supreme court has explained that statutes of repose "reflect the legislative conclusion that a point in time arrives beyond which a potential defendant should be immune from liability for past conduct," *Weston,* 716 N.W.2d at 641 (quotation omitted), and that statutes of repose are intended to create a substantive right to be free from liability after the repose period has passed. *Camacho,* 706 N.W.2d at 55.

Because Jacobs' defense against liability to the plaintiffs is based on the well-established public policy that ten years after substantial completion of the construction of an improvement to real property, no cause of action to recover damages arising out of the defective and unsafe condition of the improvement shall be brought against any person performing the design, planning, supervision, or observation of construction, we conclude that the defense defeats URS's contribution claim. Under

---

**2.** The supreme court has abolished interspousal tort immunity, *Beaudette v. Frana,* 285 Minn. 366, 373, 173 N.W.2d 416, 420 (1969), and the immunity of a parent from suit by an unemancipated child, *Anderson v. Stream,* 295 N.W.2d 595, 601 (Minn.1980).

this policy, Jacobs was immune from liability to the plaintiffs from the moment the bridge collapsed; its defense did not arise later because of a procedural mechanism.

We recognize that, because improvements to real property routinely last for many years after the ten-year repose period has passed, applying the statute of repose to defeat a contribution claim may produce harsh results. We also recognize that contribution is a flexible equitable remedy. But equity does not permit a court to change Jacobs' substantive right to be free from liability after the ten-year repose period has passed. *See Petersen v. E.F. Johnson Co.*, 366 F.3d 676, 680–81 (8th Cir.2004) (holding that district court abused discretion in granting equitable relief when defendant acted legally).

## Indemnity

Jacobs argues that the district court erred when it determined that because URS pleaded sufficient facts to show that it has only a derivative or vicarious liability for damages caused by Jacobs, URS's indemnity claim against Jacobs may go forward. We agree that the district court erred.

██ One joint tortfeasor may obtain indemnity from another joint tortfeasor when the one seeking indemnity (1) "has only a derivative or vicarious liability for damage caused by the one sought to be charged"; (2) "has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged"; (3) "has incurred liability because of a breach of duty owed to him by the one sought to be charged"; or (4) an express contract exists between the parties that contains an explicit undertaking to reimburse for liability of the character involved. *Engvall v. Soo Line R.R. Co.*, 632 N.W.2d 560, 571 (Minn.2001).

## Derivative Liability

In a case that involved the recovery of indemnity where the indemnitee had only a derivative or vicarious liability for damage caused by the indemnitor, the supreme court explained that derivative liability is predicated on, or derived from, the wrongful act of another. *Farr v. Armstrong Rubber Co.*, 288 Minn. 83, 96–97, 179 N.W.2d 64, 72 (1970). In *Farr*, a retail distributor of automobile tires sold two tires to the owner of a pickup truck. *Id.* at 86, 179 N.W.2d at 67. The pickup truck later was involved in an accident that occurred when, without warning, one of the tires blew out, and the truck veered off the road and overturned. *Id.* All four occupants sustained substantial personal injuries. *Id.* The four injured occupants and the owner of the pickup recovered verdicts against the tire manufacturer and the distributor. *Id.* At trial, the plaintiffs' expert testified that the blowout was the result of a defect in the manufacture of the tire, and the defendants' expert testified that the alleged defect was the result of impact damage. *Id.* at 87, 179 N.W.2d at 67.

The case was submitted to the jury on theories of breach of warranty, as applied to the distributor only; strict liability in tort, as applied to both the distributor and the manufacturer; and negligent failure to warn, as applied to the manufacturer only. *Id.* The jury returned a general verdict against both defendants in favor of the plaintiffs, and the court granted indemnity in favor of the distributor against the manufacturer. *Id.*, 179 N.W.2d at 67.

On appeal, the supreme court affirmed the grant of indemnity because there was no evidence that the distributor gave an express warranty, which meant that the distributor was found liable either on the grounds of breach of implied warranty or of strict liability in tort. *Id.* at 96–97, 179

N.W.2d at 72. The supreme court noted that the only statement made by the distributor's agent was "that the tires would be adequate, and this statement is nothing more than a reaffirmance of what is required under an implied warranty of merchantability, that is, fitness for the ordinary purposes for which such goods are used." *Id.* at 96, 179 N.W.2d at 72. The court also noted that, because retailers and manufacturers are engaged in the business of distributing goods to the public and the same policy considerations apply to both, strict liability in tort applies not only to manufacturers but also to retailers and distributors. *Id.* n. 1.

The court then explained with respect to the two bases for liability:

> In neither instance did [the distributor] perpetrate any active wrong upon plaintiffs. [The distributor] could not have found the defect with reasonable inspection, and it was not [the distributor's] responsibility to alter the product in any way before it was sold. Thus, as was correctly pointed out in the trial court's memorandum, [the distributor's] liability stems solely from its passive role as the retailer of a defective product furnished to it by the manufacturer, and it therefore is entitled to indemnity.

*Id.* at 96–97, 179 N.W.2d at 72. The distributor was entitled to indemnification because its liability was not based on its wrongful act and, instead, under either theory of liability, was derived from the manufacturer's wrongful act. *See Mary Ellen Enters. v. Camex, Inc.,* 68 F.3d 1065, 1072 (8th Cir.1995) ("A party claiming indemnification must demonstrate that it committed no wrong, but by virtue of some relationship with the joint tort feasor or by obligation imposed by law, was nevertheless held liable to the injured party.").

*Vicarious Liability*

■ Vicarious liability is based on a relationship between the parties, irrespective of participation, either by act or omission, of the one vicariously liable, under which it has been determined as a matter of policy that one person should be liable for the act of the other. Its true basis is largely one of public or social policy under which it has been determined that, irrespective of fault, a party should be held to respond for the acts of another.

*Nadeau v. Melin,* 260 Minn. 369, 375–76, 110 N.W.2d 29, 34 (1961); *see also Sutherland v. Barton,* 570 N.W.2d 1, 5 (Minn. 1997) (stating that vicarious liability is the imposition of liability on one person for actionable conduct of another, based solely on relationship between the two persons).

■ In its claim for indemnification, URS pleaded that Sverdrup was negligent in its design of the bridge, the bridge collapsed as a result of the negligent design, and URS is free from any fault or negligence that may have contributed to the plaintiffs' alleged damages. But URS did not plead any facts regarding a relationship that URS has with Jacobs that would make URS vicariously liable or otherwise impose liability for the plaintiffs' damages on URS even if it is ultimately determined that URS is free from fault. URS contends that the 2003 amendments [3] to the statute governing apportionment of damages, Minn.Stat. § 604.02 (2008), have not been tested on the issue whether URS could be found at trial to have zero percent fault but nonetheless have liability to the plaintiffs for any fault assigned to Jacobs. But URS does not present any interpretation of the statute that, when applied to the facts that URS pleaded, would lead to this result. Because URS has not presented, and our research has not revealed, any

**3.** 2003 Minn. Laws ch. 71, § 1, at 386.

explanation of how URS could have only a derivative or vicarious liability for damages to the plaintiffs caused by Jacobs, we conclude that the district court erred when it denied Jacobs' motion to dismiss URS's indemnity action.

## DECISION

Because the statute of repose in Minn. Stat. § 541.051, subd. 1(a), made Jacobs immune from liability to the plaintiffs at the moment the bridge collapsed, Jacobs and URS cannot have a common liability for damages to the plaintiffs, which is an element of a common-law contribution claim, and Jacobs is entitled to dismissal of the third-party claim for contribution. Because URS did not plead facts that demonstrate a relationship between Jacobs and URS or a legal obligation of URS that makes URS liable for damages caused by Jacobs even though URS committed no wrong, Jacobs is entitled to dismissal of the third-party claim for indemnity.

**Reversed.**