**In re INDIVIDUAL 35W BRIDGE LITIGATION.**

**Nos. A09–1776, A09–1778.**

Supreme Court of Minnesota.

Nov. 30, 2011.

Jocelyn L. Knoll, George Eck, Eric A.O. Ruzicka, Colin Wicker, Dorsey & Whitney LLP, Minneapolis, MN, for appellant URS Corporation.

David F. Herr, James Duffy O'Connor, Kirk O. Kolbo, Leora Maccabee, Diana

Marianetti, Maslon Edelman Borman & Brand, LLP, Minneapolis, MN, for respondent Jacobs Engineering Group, Inc.

## OPINION

DIETZEN, Justice.

This case arises out of the August 1, 2007, collapse of the Interstate 35W Bridge (Bridge) where it crosses the Mississippi River in Minneapolis, Minnesota. Following the collapse, individual plaintiffs commenced lawsuits against appellant URS Corporation (URS), a contractor that performed work on the Bridge pursuant to a contract entered into with the State of Minnesota. URS then brought a third-party complaint against respondent Jacobs Engineering Group, Inc. (Jacobs), for indemnity and contribution on the basis that Jacobs' predecessor negligently designed the Bridge. Jacobs moved to dismiss the lawsuits as time-barred, and argued that the 2007 amendments to Minn.Stat. § 541.051 (2010) did not revive actions for contribution or indemnity that had been previously extinguished by a prior version of the statute of repose. Jacobs also argued that it did not have common liability with URS to support an action for contribution. The district court denied the motion to dismiss, but the court of appeals reversed. Because we conclude that the 2007 amendments to Minn.Stat. § 541.051 do not retroactively revive URS's action for contribution against Jacobs, we affirm the court of appeals.

The factual background of this dispute begins with the design and construction of the Interstate 35W Bridge. In October 1962, Sverdrup & Parcel and Associates, Inc. (Sverdrup), entered into a contract with the State to prepare design and construction plans for the Bridge. Sverdrup certified the final Bridge design and construction plans in March 1965, and construction of the Bridge was substantially completed in 1967. Between 1966 and 1999, Sverdrup went through a series of name changes and mergers. In September 1999, Sverdrup Corporation merged with Jacobs, and Jacobs was the surviving corporation. Jacobs is the successor in interest to Sverdrup for the purpose of this proceeding.

In 2003, the State entered into a series of contracts with URS to inspect the Bridge to determine the nature and scope of maintenance needed to be performed on the Bridge. URS contracted with the State to perform a fatigue evaluation and fracture analysis of the Bridge. On August 1, 2007, the Bridge collapsed, resulting in the deaths of 13 people and injuries to 145 others. In 2008, the Legislature passed the compensation statutes, Minn. Stat. §§ 3.7391–.7395 (2010), to compensate "survivors" of the collapse.[1] Subsequently, the State entered into settlement agreements with 179 survivors who made statutory claims for compensation. All of the survivors who settled pursuant to the compensation statutes signed releases with the State.

Individual plaintiffs commenced lawsuits against URS for negligence, breach of contract, and resulting damages.[2] The dis-

---

1. For purposes of the compensation statutes, "survivor" is defined as "a natural person who was present on the I–35W bridge at the time of the collapse." Minn.Stat. § 3.7392. The definition also includes "(1) the parent or legal guardian of a survivor who is under 18 years of age; (2) a legally appointed representative of a survivor; or (3) the surviving spouse or next of kin of a deceased survivor who would be entitled to bring an action under section 573.02." *Id.*

2. URS has since settled all claims asserted against it by the individual plaintiffs. Additionally, the individual plaintiffs commenced lawsuits against Progressive Contractors, Inc. (PCI), which was the company performing

trict court consolidated the individual plaintiffs' cases for pretrial purposes and dismissed the plaintiffs' breach of contract claims. URS then brought a third-party complaint against Jacobs for indemnity and contribution asserting that Jacobs, which is the successor-in-interest to Sverdrup, was legally responsible for Sverdrup's negligent design that caused the Bridge to collapse. The asserted negligence included the selection of gusset plates that allegedly were only half the necessary thickness. In its lawsuit, URS argues that Jacobs is liable to URS as a joint tortfeasor for its proportionate share of the liability to the individual plaintiffs for their injuries.

Jacobs moved to dismiss the third-party causes of action for contribution and indemnity on the basis that those causes of action were extinguished by the statute of repose in section 541.051. Jacobs also argued that it acquired a vested right to immunity from suit upon expiration of the statute of repose, and that reviving actions against it would violate its due process rights under the U.S. and Minnesota Constitutions. Finally, Jacobs argued it did not share common liability with URS to the plaintiffs that is necessary to support a contribution action. URS argued that it could bring third-party actions against Jacobs as a result of the 2007 amendments to section 541.051, which revived its causes of action for contribution and indemnity. Af-

ter a hearing, the district court denied Jacobs' motion to dismiss the third-party causes of action and Jacobs appealed.[3]

In a published opinion, the court of appeals reversed the district court and dismissed URS's third-party actions for contribution and indemnity against Jacobs. *In re Individual 35W Bridge Litig.,* 786 N.W.2d 890, 901 (Minn.App.2010). The court concluded that an essential element of the action for contribution is that Jacobs and URS share a common liability to the individual plaintiffs, and that the statute of repose for direct claims in section 541.051, subdivision 1(a), precludes common liability. *Id.* at 896. The court of appeals did not address whether the 2007 amendments to section 541.051 applied retroactively to revive URS's actions for contribution and indemnity against Jacobs. Subsequently, we granted URS's petition for further review and Jacobs' conditional request for cross-review.

### I.

On appeal, URS argues that the court of appeals erred in granting Jacobs' motion to dismiss its action for contribution on the basis that there is no common liability between Jacobs and URS to the plaintiffs.[4] Specifically, URS argues that the statute of repose for direct claims in section 541.051, subdivision 1(a), does not destroy common liability between URS and Jacobs to the plaintiffs. Jacobs argues that

maintenance on the Bridge when it collapsed. PCI then brought third-party complaints against Jacobs and the State of Minnesota. While this case was pending in the court of appeals, PCI settled all claims asserted against it and is no longer a party to this appeal.

3. Initially, the court of appeals questioned whether it had jurisdiction over the appeals and requested briefs from the parties. Subsequently, the court concluded that the question of whether Jacobs is immune from liability

based upon the statute of repose is a legal issue separate from the merits of the underlying action and appealable pursuant to the collateral order doctrine. *In re Individual 35W Bridge Litig.,* 786 N.W.2d 890, 893 (Minn.App.2010); *see Kastner v. Star Trails Ass'n,* 646 N.W.2d 235, 240 (Minn.2002) (adopting the collateral order doctrine).

4. URS did not appeal the court of appeals' dismissal of its common law indemnity action, and therefore that claim is not before us.

URS's cause of action for contribution was extinguished by the statute of repose in section 541.051 and therefore the cause of action is time-barred.

■■■ We review de novo decisions on motions to dismiss for failure to state a claim upon which relief can be granted under Minn. R. Civ. P. 12.02(e). *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn.2003). The question before the court is whether the complaint sets forth a legally sufficient claim for relief. *Id.* We consider only those facts alleged in the complaint, accepting those facts as true and construing all reasonable inferences in favor of the non-moving party. *Id.* We also review de novo the interpretation of a statute. *Zurich Am. Ins. Co. v. Bjelland*, 710 N.W.2d 64, 68 (Minn.2006). In construing the language of a statute, we give words and phrases their plain and ordinary meaning. Minn.Stat. § 645.08 (2010); *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999). Thus, if the language of a statute is clear and free from ambiguity, our role is to enforce the language of the statute, and not explore the spirit or purpose of the law. Minn.Stat. § 645.16 (2010).

■■■ Contribution is an equitable remedy that allows "one who has discharged more than his fair share of a common liability or burden to recover from another who is also liable the proportionate share which the other should pay or bear." *Hendrickson v. Minn. Power and Light Co.*, 258 Minn. 368, 370, 104 N.W.2d 843, 846 (1960). The elements of contribution are "common liability of joint tortfeasors to an injured party and the payment by one of the tortfeasors of more than his share of that liability." *Hart v. Cessna Aircraft Co.*, 276 N.W.2d 166, 168 (Minn. 1979). In its contribution action, URS asserts that Jacobs is liable to URS as a joint tortfeasor for its proportionate share

of the liability to the individual plaintiffs for their injuries resulting from the Bridge collapse.

The crux of this dispute is whether the statute of repose for direct claims in section 541.051 destroys common liability between URS and Jacobs to the individual plaintiffs. Because the question of whether URS's action for contribution against Jacobs was extinguished by the statute of repose for contribution and indemnity claims in section 541.051 is dispositive, we address that issue first.

Jacobs argues that URS's contribution action was extinguished by a prior version of the statute of repose in section 541.051. Specifically, Jacobs argues that the Bridge was substantially completed in 1967, and that the repose period expired ten years later in 1977, or at a minimum fifteen years later in 1982. URS counters that the 2007 amendments to section 541.051 allowed its action for contribution to accrue after the June 30, 2006, effective date of the amendments, and therefore its action for contribution was not barred by the statute of repose. Jacobs responds that the 2007 amendments do not retroactively revive causes of action previously extinguished by the statute of repose. To answer the question presented, we must decide what version of the statute of repose is applicable and whether that statute bars URS's cause of action.

■■■ Minnesota Statutes section 541.051 sets forth time limitations for bringing an action for damages, including an action for contribution or indemnity, arising out of the defective and unsafe condition of an improvement to real property. Section 541.051 contains both a statute of limitations and a statute of repose. A statute of limitations has the effect of limiting the time in which a party can pursue a remedy, and a statute of repose

limits the time in which a party can acquire a cause of action. *Weston v. McWilliams & Assoc., Inc.,* 716 N.W.2d 634, 641 (Minn.2006). As such, a statute of repose "terminate[s] the possibility of liability after a defined period of time, regardless of the potential plaintiff's lack of knowledge of his or her cause of action." *Id.* (citing 51 Am.Jur.2d *Limitation of Actions* § 18 (2000)). Moreover, statutes of repose "reflect the legislative conclusion that a point in time arrives beyond which a potential defendant should be immune from liability for past conduct." *Id.* When the repose period expires, the cause of action is extinguished and can no longer accrue.

Section 541.051 was first enacted by the Legislature in 1965 and has been significantly amended several times. Minn.Stat. § 541.051. The 1965 version of section 541.051, subdivision 1, provided that any action for damages, including an action for contribution or indemnity, arising out of the defective and unsafe condition of an improvement to real property, could not be brought more than two years after the discovery of the injury or more than ten years after the completion of the construction. Act of May 21, 1965, ch. 564, § 1, 1965 Minn. Laws 803, 803 (codified at Minn.Stat. § 541.051 (1965)).

In 1977, we reviewed the constitutionality of section 541.051 in *Pacific Indemnity Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548 (Minn.1977). At issue was whether section 541.051 violated the Equal Protection Clause of the U.S. Constitution on the ground that the time limitations in the statute protected persons who constructed or designed improvements to real estate, but excluded other persons against whom third parties might bring causes of action, such as owners and material suppliers. *Id.* at 555. We held section 541.051 unconstitutional, reasoning that there was no "rational basis for regarding [persons who construct and design improvements to real property] as a separate and distinct class." *Id.*

Subsequently, the Legislature amended section 541.051 in 1980 to remove the unconstitutional classification identified in *Pacific Indemnity,* and to extend the repose period for all causes of action, including those for contribution and indemnity, from ten years to fifteen years after substantial completion of the construction. *See* Act of Apr. 7, 1980, ch. 518, §§ 2–3, 1980 Minn. Laws 596, 596 (codified at Minn.Stat. § 541.051 (1982)) (stating "nor, in any event shall such a cause of action accrue more than 15 years after substantial completion of the construction"). Under the 1980 version of section 541.051, no causes of action against Jacobs, including actions for contribution or indemnity, arising out of the construction of the Bridge could accrue more than fifteen years after substantial completion of the Bridge's construction.

In 1986, the Legislature again amended the statute. Act of Mar. 25, 1986, ch. 455, § 92, 1986 Minn. Laws 840, 885–86 (codified at Minn.Stat. § 541.051 (1988)). The 1986 amendment reduced the repose period for all causes of action, including those for contribution and indemnity, from fifteen to ten years. Minn.Stat. § 541.051 (1988) (stating "nor, in any event shall such a cause of action accrue more than ten years after substantial completion of the construction"). Finally, in 1988 the Legislature added language setting forth the accrual date for both direct claims and actions for contribution and indemnity; specifically, "a cause of action accrues upon discovery of the injury or, in the case of an action for contribution or indemnity, upon payment of a final judgment, arbitration award or settlement arising out of the defective and unsafe condition." Act of April 24, 1988, ch. 607, § 1, 1988 Minn.

Laws 680, 680–81 (codified at Minn.Stat. § 541.051 (1988)).

We conclude that the 1980 version of section 541.051 operated to extinguish URS's action for contribution against Jacobs by 1982. The 1980 amendment was effective as of August 1, 1980, and therefore applied to causes of action for which the statute of repose had not yet expired. *See also Lovgren v. Peoples Elec. Co.,* 380 N.W.2d 791, 796 (Minn.1986) (finding the 1980 amendments effective as of Aug. 1, 1980). The relevant language of the 1980 version of section 541.051 provided that the repose period for a contribution cause of action was no more than "15 years after substantial completion of construction." Minn.Stat. § 541.051 (1980). When the Bridge was substantially completed in 1967, the ten-year statute of repose in the 1965 version of section 541.051 was applicable and due to expire in 1977. But the 1965 version was declared unconstitutional in 1977 by our decision in *Pacific Indemnity Co.,* and therefore the contribution cause of action did not expire in 1977. 260 N.W.2d at 555. Thus, the contribution cause of action was pending when the 1980 amendment became effective. Subsequently, the fifteen-year repose period on URS's contribution cause of action expired in 1982, and the cause of action could not accrue after that date.[5] *See Weston,* 716 N.W.2d at 641 (noting that the expiration of a statute of repose "terminate[s] the possibility of liability" after a definite period of time).

The 2007 amendments made substantial changes to section 541.051. *See* Act of May 21, 2007, ch. 105, § 4, 2007 Minn. Laws 624, 625–26 (codified at Minn.Stat. § 541.05 (2008)); Act of May 25, 2007, ch. 140, art. 8, § 29, 2007 Minn. Laws 1410, 1535–36 (codified at Minn.Stat. § 541.051 (2008)). Two changes are relevant to this dispute. First, contribution and indemnity causes of action are now subject to a two-year statute of limitations from the date of accrual of the cause of action, regardless of when the repose period on the direct claims expired. Minn.Stat. § 541.051, subd. 1(b). The repose period for direct claims continues to be governed by subdivision 1(a) and is ten years after substantial completion of the construction. *Id.,* subd. 1(a). Second, the 2007 amendments changed the accrual date for contribution and indemnity causes of action. *Id.,* subd. 1(c). Specifically, subdivision 1(c) provides that the accrual date for contribution and indemnity causes of action is the earlier of either (1) the commencement of the action against the party seeking contribution or indemnity, or (2) the payment of a final judgment, arbitration award, or settlement. *Id.*

It is undisputed that URS commenced its contribution action against Jacobs within the two-year statute of limitations for contribution actions.[6] *See* Minn.Stat. § 541.051, subd. 1(b) (setting forth a two-year statute of limitations for contribution actions). Accordingly, if the 2007 amendments are applicable, URS's claims are not time-barred.

---

**5.** Because the repose period under the 1980 version of section 541.051 expired in 1982 and no causes of action could accrue after that date, the 1986 version, which changed the repose period to ten years, is not applicable.

**6.** The individual plaintiffs commenced a direct action against URS on November 12,

2008, and URS settled the claims on October 5, 2010. Therefore, URS's contribution action accrued on November 12, 2008. URS commenced its contribution action on February 22, 2009, which was well within the two-year statute of limitations provided in the 2007 amendments.

## II.

The remaining question therefore is whether the 2007 amendments retroactively revived URS's action for contribution previously extinguished by the 1980 version of the statute of repose in section 541.051. URS argues that the 2007 amendments to section 541.051 revived its contribution cause of action against Jacobs and allowed it to accrue. Jacobs counters that the 2007 amendments did not revive causes of action that previously had been extinguished by the statute of repose.

The 2007 amendments were enacted in response to our decision in *Weston v. McWilliams & Assoc., Inc.*, 716 N.W.2d 634 (Minn.2006).[7] In *Weston*, we considered the applicability of the statute of repose to actions for contribution and indemnity by a general contractor against subcontractors and suppliers. *Id.* at 636. The general contractor substantially completed a home in July 1993. *Id.* at 636–37. In May 2003, two months before the ten-year repose period under Minn.Stat. § 541.051 had expired, the homeowners sued the general contractor for damages due to water intrusion and mold problems. *Weston*, 716 N.W.2d at 637. In March 2004, the general contractor sued various subcontractors and suppliers for indemnity and contribution. *Id.* The district court granted summary judgment to the subcontractors and suppliers on the ground that the actions for contribution and indemnity were barred by the statute of repose, and the court of appeals reversed. *Id.* at 637–38.

We reversed and remanded for reinstatement of the summary judgment, holding that section 541.051 barred an action for contribution or indemnity by a general contractor against a subcontractor or supplier not brought within the repose period.[8] *Id.* at 640. The district court noted that when the owner sued the general contractor in May 2003, which was within the ten-year statute of repose for the owner's direct claims, the general contractor's actions for contribution or indemnity against the subcontractors or suppliers had not yet accrued. *Id.* at 637. Specifically, the general contractor's causes of action did not accrue until the "payment of a final judgment, arbitration award, or settlement arising out of the defective and unsafe condition." Minn.Stat. § 541.051, subd. 1(b) (2006). When the statute of repose expired in July 2003, the general contractor's actions for contribution and indemnity had not yet accrued. 716 N.W.2d at 637. The practical effect of the statute prior to the 2007 amendment was that a direct claim could be brought near the end of the repose period against a general contractor, but the general contractor's actions for contribution or indemnity could be time-barred before they accrued. *See id.*

To determine whether the 2007 amendments are applicable to this dispute, we must examine whether the Legislature intended the amendments to be retroactive. A statute operates retroactively if it " 'affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute.' " *In re Petition for Instructions to Construe*

---

7. *Weston* was decided on June 29, 2006. 716 N.W.2d at 634. The 2007 amendments were enacted in May 2007, with an effective date of June 30, 2006. Act of May 21, 2007, ch. 105, § 4, 2007 Minn. Laws 624, 625–26; Act of May 25, 2007, ch. 140, art. 8, § 29, 2007 Minn. Laws 1410, 1535–36.

8. The statute of repose governing the action stated, in relevant part, that no action for contribution or indemnity could "accrue more than ten years after substantial completion of the construction." Minn.Stat. § 541.051, subd. 1(a) (2006).

*Basic Resolution 876 of Port Auth. of St. Paul,* 772 N.W.2d 488, 494 (Minn.2009) (quoting 73 Am.Jur.2d *Statutes* § 244 (2001)). Minnesota Statutes section 645.21 (2010) provides: "No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." We have previously stated that use of the term "retroactive" is sufficient to demonstrate intent that the statute operate retroactively. *Duluth Firemen's Relief Ass'n v. City of Duluth,* 361 N.W.2d 381, 385 (Minn.1985).

In *Gomon v. Northland Family Physicians,* we considered whether a new four-year statute of limitations applied retroactively to revive an action that was commenced after the effective date of the new statute, but within four years of the date the cause of action accrued. 645 N.W.2d 413, 416 (Minn.2002). The plaintiff's medical malpractice claim accrued in July 1996, and he commenced an action in December 1999. *Id.* at 415. At the time the claim accrued, the statute of limitations was two years, and therefore, the claim was time-barred under the previous statute of limitations. *Id.* Subsequently, the Legislature enacted an amendment to the statute replacing the two-year statute of limitations for medical malpractice actions with a four-year limitation period, which was "effective on August 1, 1999, and applie[d] to actions commenced on or after that date." Act of Mar. 26, 1999, ch. 23, §§ 2–3, 1999 Minn. Laws 128, 130 (codified at Minn.Stat. § 541.076 (2000)). The district court applied the two-year limitations period in effect at the time the cause of action accrued, and granted the defendant's motion for summary judgment. *Gomon,* 645 N.W.2d at 415. The court of appeals affirmed. *Id.*

We reversed, holding that the Legislature, by its use of plain and unambiguous language, clearly and manifestly expressed its intent that the four-year statute of limitations applied retroactively to revive the plaintiff's time-barred claims. *Id.* at 420. We reasoned that our role was to construe the language of a statute, including its effective date, according to its plain and ordinary meaning, and that no law should be construed to be retroactive unless "clearly and manifestly" intended by the Legislature. *Id.* at 416; *see* Minn.Stat. §§ 645.16, .21. In doing so, we declined to require additional express language for revival of time-barred claims "over and above the requirement that intent to revive be clearly and manifestly expressed." 645 N.W.2d at 419.

Applying section 645.21 and *Gomon,* we examine whether the 2007 amendments clearly and manifestly demonstrate a legislative intent to retroactively revive causes of action previously extinguished by the statute of repose. The relevant statutory language is the effective date of the amendments, which is contained in two separate session laws signed by the Governor on May 21, 2007 and May 25, 2007. Act of May 21, 2007, ch. 105, § 4, 2007 Minn. Laws 624, 625–26 (codified at Minn. Stat. § 541.051 (2008)); Act of May 25, 2007, ch. 140, art. 8, § 29, 2007 Minn. Laws 1410, 1535–36 (codified at Minn.Stat. § 541.051 (2008)). The May 21, 2007 law states that "[t]his section is effective retroactively from June 30, 2006," and the May 25, 2007 law states that "[t]his section is effective retroactive to June 30, 2006."

The court of appeals concluded that the effective date language establishes a "continuous retroactive application of amended section 541.051 from May 22, 2007 indefinitely into the past" and therefore revived the causes of action. *In re Individual 35W Bridge Litig.,* 787 N.W.2d 643, 650 n. 6 (Minn.App.2010). We review the court of appeals' interpretation of a statute de novo. *See Imperial Developers, Inc. v.*

*Calhoun Dev., LLC,* 790 N.W.2d 146, 148 (Minn.2010).

We interpret the effective date language to mean that the statute applies retroactively to causes of action "from" June 30, 2006, to the date the legislation was enacted, May 21, 2007; and from the date of enactment "to" June 30, 2006, for two reasons. First, the plain and ordinary meaning of the language is that the operative date of the statute is June 30, 2006, and it applies to causes of action for contribution that were not extinguished by the statute of repose as of June 30, 2006.

Second, the effective date language of the statute does not "clearly and manifestly" demonstrate an intent to retroactively revive claims that were previously extinguished by a statute of repose before June 30, 2006. Had the Legislature desired to do so, it could have used explicit language to clearly and manifestly express such an intent. It did not. The court of appeals' interpretation is erroneous because it ignores the presumption against retroactivity unless the statute "clearly and manifestly" demonstrates contrary legislative intent. Minn.Stat. § 645.21; *Gomon,* 645 N.W.2d at 416. As a result, we conclude that the 2007 amendments were effective on June 30, 2006, and revived causes of action for contribution that were not previously extinguished by the statute of repose prior to that date.

URS's claim was already extinguished by June 30, 2006. Accordingly, we hold that URS's contribution cause of action against Jacobs was not retroactively revived by the 2007 amendments to Minn. Stat. § 541.051, and therefore Jacobs is entitled to dismissal of URS's action for contribution.[9]

Affirmed.

9. Jacobs also argued that it was entitled to dismissal of URS's action for contribution because there was no common liability between URS and Jacobs to the plaintiffs. Because we decide this case on the ground that no contribution action accrued against Jacobs, we decline to reach the issue of common liability.