Gary L. SARTORI and Susan Sartori, Respondents,

v.

HARNISCHFEGER CORPORATION, Appellant,

v.

OGLEBAY NORTON TACONITE COMPANY, Respondent.

John NELSON and Candy Nelson, Respondents,

v.

HARNISCHFEGER CORPORATION, Appellant,

v.

OGLEBAY NORTON TACONITE COMPANY, Respondent.

No. C7-88-756.

Supreme Court of Minnesota.

Dec. 2, 1988.

Anthony Downs, Steven Schneider, Duluth, for appellant.

Thomas R. Thibodeau, Duluth, for Oglebay Taconite.

J. Cuever Richards, Virginia, for John Nelson.

Duane E. Arndt, Minneapolis, for Gary Sartori.

Peter Riley, Minneapolis, amicus curiae, for Minnesota Trial Lawyers Assoc.

Eric J. Magnuson, Minneapolis, for Minnesota Defense Lawyers.

---

1. The load block is the assembly of hook, swivel, bearing, pulleys, pins and frame suspended

POPOVICH, Justice.

The United States District Court, pursuant to Minn.Stat. § 480.061 (1986), certified the following questions to this court:

1. Whether the equipment at issue in these cases constitutes an "improvement to real property" within the meaning of Minn. Stat. § 541.051 (1980); and

2. Whether application to these cases of the 15–year statute of limitations set forth in Minn.Stat. § 541.051 (1980) is an unconstitutional violation of the remedies clause (art. 1, § 8), and of the due process clause (art. 1, § 7) of the Minnesota Constitution.

I.

In its order dated March 30 and filed April 4, 1988, the United States District Court, District of Minnesota, Fifth Division, specified the following facts giving rise to the certified questions herein:

Plaintiffs in these matters, Gary L. Sartori and John Nelson, were injured on December 19, 1984, while working in the crusher area of the Thunderbird Mine facility in Eveleth, Minnesota. That facility is owned by third-party defendant Oglebay Norton Taconite Company. The injuries to plaintiffs occurred when the load block [1] from an overhead rail crane designed and manufactured by defendant and third-party plaintiff Harnischfeger Corporation fell into the area where plaintiffs were working.

The Overhead Rail Crane

The overhead rail crane was sold to Oglebay Norton under a proposal dated April 28, 1964, and was shipped to the Thunderbird Mine facility on December 23, 1964. The purchase documents required the crane to be erected by Oglebay Norton. On June 8–10, 1965, an employee of Harnischfeger performed a final checkout of the installation. The overhead rail crane had a shipping weight of 71 tons and a cost at the time of purchase of $80,955. The crane can be dismantled without destroying

by the hoisting cable.

or tearing down the crusher building. Cranes similar to the one at issue in these cases have been relocated. The crane is listed as "production equipment" on Oglebay Norton's fixed equipment list.

The crane is connected to the crusher building by means of its rail transport system. A system of catwalks and platforms has been erected within the crusher building to facilitate use and maintenance of the crane. These catwalks and platforms are incorporated into the building's design. There are two hoist mechanisms on the crane. The main hoist has a lifting distance of 113 feet and a lifting capacity of 80 tons. The auxiliary hoist has a lifting distance of 150 feet and a lifting capacity of 15 tons.

The crane is equipped with two "limit switches" designed to prevent "overtravel" when hoisting, the geared limit switch and the HB limit switch. The limit switches stop the hoisting action of the crane, thus establishing an upper limit for load block travel. The geared limit switch would normally be activated before the HB limit switch. At the time of the accident, only the HB limit switch was operational. The geared limit switch had been disconnected about ten years earlier by employees of Oglebay Norton because of problems experienced with its use.

Oglebay Norton did not have a continuing maintenance or inspection contract with Harnischfeger. Rather, Harnischfeger provided assistance to Oglebay Norton as needed and when called. On those occasions, Harnischfeger's service representative conducted inspections and submitted field service reports making recommendatons to Oglebay Norton. Oglebay Norton was then free to perform the recommended work itself or to request assistance from Harnischfeger.

In November 1984, Oglebay Norton requested that Harnischfeger send a service representative to its facility. The request was made because Oglebay Norton had experienced a bearing problem on a drum that is part of the small hook.[2] The crane inspection report indicated that the service representative had adjusted a component of the brakes. His report noted that the condition of the limit switches was "o.k." and that the general condition of the crane was satisfactory.

### The Accident

At the time of the accident, plaintiffs Nelson and Sartori were in the crusher cavity working on replacement of the crusher's concaves.[3] The crane had been used to lift equipment into the crusher cavity. Immediately before the accident, it became clear that additional equipment was needed from a storage area. The crane operator raised the load hook to enable it to clear certain catwalks. As the load hook was rising, the operator turned his attention away.[4] At that point the HB limit switch failed, causing the cable on the load hook to break. As a result, the load block fell into the crusher cavity. Plaintiffs Sartori and Nelson were both seriously injured.

### Procedural Posture

The allegations against Harnischfeger, as reflected in plaintiffs' amended complaints, are as follows:

1. Defendant Harnischfeger negligently designed, manufactured and tested the crane, failed to give warnings as to the dangers involved in the use of the crane, and failed to give adequate instructions with respect to the use of the crane;

2. Defendant Harnischfeger breached implied warranties of merchantability and fitness for a particular purpose;

2. The load hook is the lowest part of the load block and is used to support the load.

3. The concaves are sheets of metal formed in a concave shape and are used to line the crusher.

4. The crane operator walked through a doorway onto a walkway and leaned over to pick up some buckets that were obstructing his path.

The operator moved away from the controls so he could see the crane bridge (the crane bridge is the part of the crane that carries the trolley). According to an eyewitness, this was necessary so he could see that it was clear to travel to where the equipment was lying and so that he could take directions from the employee who was to rig up the equipment.

3. Defendant Harnischfeger designed, manufactured and distributed the crane in a condition that was defective and unreasonably dangerous to users;

4. Defendant Harnischfeger negligently and carelessly inspected the crane at various times, including November 1984. Defendant Harnischfeger has denied all of the allegations asserted in the amended complaints.

This matter came before the court on defendant and third-party plaintiff Harnischfeger's motion for summary judgment on the ground that the overhead rail crane in question constitutes an improvement to real property within the meaning of Minn. Stat. § 541.051. It is Harnischfeger's position that 18½ years passed between completion of the installation on June 8–10, 1965, and the injuries to plaintiffs on December 19, 1984. Harnischfeger claims that the passage of more than 15 years since the date of substantial completion of the construction of an improvement to real property bars plaintiffs' claims in all respects.

Plaintiffs contend that the overhead rail crane at issue is not an improvement to real property within the meaning of Minn. Stat. § 541.051 but, if it is, application of the 15–year period of repose set forth in that statute is an unconstitutional violation of the remedies clause of the Minnesota Constitution and of the due process clauses of the United States and Minnesota Constitutions.

## II.

Minn.Stat. § 541.051 (1980) provides in pertinent part:

Subdivision 1. Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of the injury, shall be brought against any person performing or furnishing the design, planning, super-vision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery thereof, nor, in any event shall such a cause of action accrue more than 15 years after substantial completion of the construction. Date of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner or his representative can occupy or use the improvement for the intended purpose.

Nothing in this section shall apply to actions for damages resulting from negligence in the maintenance, operation or inspection of the real property improvement against the owner or other person in possession.

In *Pacific Indemnity Company v. Thompson–Yeager, Inc.*, 260 N.W.2d 548 (Minn.1977), we set forth a "common sense interpretation" of the phrase "improvement to real property" which would give "effect to the plain meaning of the words of the statute without resort to technical legal constructions of its terms." *Id.* at 554. An "improvement to real property" was defined as:

[A] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.

*Id.* (citing *Kloster–Madsen, Inc. v. Tafi's Inc.*, 303 Minn. 59, 63, 226 N.W.2d 603, 607 (1975)).

Minnesota courts have applied this definition in subsequent cases. See *Frederickson v. Alton M. Johnson Co.*, 402 N.W.2d 794, 796–97 (Minn.1987) (electrical cabinets treated as an "improvement"); *Bulau v. Hector Plumbing and Heating Co.*, 402 N.W.2d 528, 529–30 (Minn.1987) (fireplace treated as an "improvement"); *Capitol Supply Co. v. City of St. Paul*, 316 N.W.2d 554, 555 (Minn.1982) (sewer system treated as an "improvement"); for further examples *see also Massie v. City of Duluth*, 425

N.W.2d 858, 861 (Minn.App.1988) (water slide at city pool, designed to be removed for storage every winter, held not an "improvement"); *O'Connor v. M.A. Mortenson Company*, 424 N.W.2d 92, 94 (Minn. App.1988) (unfinished steel stairway in building under construction held to be an "improvement"); *Kemp v. Allis–Chalmers Corporation*, 390 N.W.2d 848, 851 (Minn. App.1986) (electrical cable installed as part of the electrical transmission system of a pellet plant qualified as an "improvement"); *Lovgren v. Peoples Electric Company, Inc.*, 368 N.W.2d 16, 18 (Minn.App. 1985) (permanently installed transformer vault in a steel mill, wired to a steel furnace and to an electrical substation outside the plant and bolted to the floor, constituted an "improvement").

A recent federal district court decision in *Moen v. Rexnord, Inc.*, 659 F.Supp. 988 (D.Minn.1987) held that a rock crushing machine, similar to the crane at issue here, constituted an improvement to real property under Minn.Stat. § 541.051. *Id.* at 989. The rock crusher was affixed to a concrete foundation and had several stairways, platforms and chutes surrounding it. *Id.* Although the rock crusher was removable and had been transported to Minnesota after originally being installed in New Guinea, the court found that it constituted an improvement to real property under this court's definition since it was "installed through the expenditure of labor and money, was designed to make the rock-crushing company's property more useful, and enhanced the property's capital value." *Id.*

■ The crane at issue in this matter also qualifies as an improvement to real property under our definition because: (1) The crane was a permanent addition to or betterment of real property. Since the crane was fabricated on the property in 1965 it has not been moved and there is no indication by either party that the owners intend to relocate it. (2) The permanent nature of the crane is also evidenced by the intricate series of catwalks, walkways and rails that have been constructed around it in order to allow access to and operation of the machinery. (3) The crane enhances the capital value of the property by allowing the excavation of minerals from the land. Without the crane the mining operation would not be as successful and the profitability of the land would decrease. (4) Transporting the crane to Minnesota, installing it on the property, and constructing the series of catwalks and walkways that surround it involved the expenditure of both labor and money. (5) The presence of the crane on the land makes the property more useful or valuable, as distinguished from ordinary repairs and is designed to enable the mining operation to function more effectively. As such, it provides long-term benefits by increasing the productivity of the mining operation.

### III.

■ Appellants contend respondents may not challenge the constitutionality of Minn.Stat. § 541.051 since they failed to notify the Minnesota Attorney General of their intention to do so under Minn.R.Civ.P. 24.04 (1988). Respondents do not deny they failed to notify the attorney general under this rule and provide no explanation for their failure to do so. This certification order from a federal district court is not governed by the requirements of Minn.R. Civ.P. 24.04. That rule only governs the procedure in the district courts of the state of Minnesota. Minn.R.Civ.P. 1 (1988). However, we believe it would be good practice in the future for parties challenging the constitutionality of a Minnesota statute on a certified question from a federal district court to notify the Minnesota Attorney General of their intention to do so under the principles of Minn.R.Civ.P. 24.04 and Minn.R.Civ.App.P. 144 (1988). As we said in *Elwell v. County of Hennepin*, 301 Minn. 63, 73, 221 N.W.2d 538, 545 (1974), it is extremely doubtful we would hold a statute unconstitutional if the attorney general had not been properly notified.

### IV.

Respondents challenge the constitutionality of Minn.Stat. § 541.051 on grounds it violates the due process and remedies

clauses of the Minnesota Constitution.[5] A statute is presumed constitutional unless proven otherwise beyond a reasonable doubt. *Hickman v. Group Health Plan, Inc.*, 396 N.W.2d 10, 13 (Minn.1986) (citing *Minnesota Higher Education Facilities Authority v. Hawk*, 305 Minn. 97, 232 N.W.2d 106 (1975)). A party who challenges a Minnesota statute as unconstitutional bears the burden of establishing beyond a reasonable doubt that the statute violates some constitutional provision. *See Head v. Special School District No. 1*, 288 Minn. 496, 506, 182 N.W.2d 887, 893–94 (1970), cert. denied, 404 U.S. 886, 92 S.Ct. 196, 30 L.Ed.2d 168 (1971). The power to declare a statute unconstitutional is to be exercised only when absolutely necessary and then only with great caution. *Minneapolis Gas Co. v. Zimmerman*, 253 Minn. 164, 173, 91 N.W.2d 642, 650 (1958). A majority of states have enacted statutes of repose similar to Minn.Stat. § 541.051, limiting the time in which an action can be brought against architects, builders and material suppliers for defects arising from improvements to real property.[6]

The Minnesota Constitution provides that an individual will not be deprived of property rights without due process of law. Minn. Const. art. 1, § 7. The due process

protection provided under the Minnesota Constitution is identical to the due proces guaranteed under the Constitution of the United States. *See Anderson v. City of St. Paul*, 226 Minn. 186, 190, 32 N.W.2d 538, 541 (1948). We have held in previous cases that the legislature may constitutionally abrogate a common law right without providing a reasonable substitute if it is pursuing a permissible, legitimate legislative objective. *Calder v. City of Crystal*, 318 N.W.2d 838, 844 (Minn.1982); *Haney v. International Harvester Co.*, 294 Minn. 375, 385, 201 N.W.2d 140, 146 (1972). The United States Supreme Court also applied this rational basis test in *Silver v. Silver*, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929), stating that "the Constitution does not forbid * * * the abolition of old [rights] recognized by the common law, to attain a permissible legislative objective." *Id.* at 122, 50 S.Ct. at 58; *see also Duke Power Co. v. Carolina Environmental Study Groups, Inc.*, 438 U.S. 59, 83–84, 88, 98 S.Ct. 2620, 2635–36, 2638, 57 L.Ed.2d 595 (1979) (liability limitations with an economic purpose are constitutional unless the legislature acted in an arbitrary and irrational way); *Jewson v. Mayo Clinic*, 691 F.2d 405, 411–12 (8th Cir.1982) (malpractice statute of repose did not violate due process

---

**5.** Minn.Stat. § 541.051 was also challenged on equal protection grounds in a brief submitted by amicus Minnesota Trial Lawyers Association. This issue was not contained in the certification order presented to this court. Minn.Stat. § 541.051 has already been found constitutional on equal protection grounds in *Calder v. City of Crystal*, 318 N.W.2d 838 (Minn.1982). We held that amendments made to the statute since our decision finding it unconstitutional on equal protection grounds in *Pacific Indemnity*, 260 N.W.2d at 548, "close[d] the door to objection to the statute on equal protection grounds." *Calder*, 318 N.W.2d at 843.

**6.** Ala.Code § 6–5–218 (Supp.1988); Alaska Stat. § 09.10.055 (1988); Ark.Code Ann. 16–56–112 (1987); Cal.Civ.Proc.Code § 337.1 (West 1982); Colo.Rev.Stat. § 13–80–104 (1987); Conn.Gen. Stat. § 52–584a (1987); Del.Code Ann. tit. 10, § 8127 (1974); D.C.Code Ann. § 12–310 (1981); Fla.Stat. § 95.11(3)(c) (1987); Ga.Code Ann. §§ 9–3–51 (1982); Hawaii Rev.Stat. § 657–8 (1985); Idaho Code § 5–241 (1979); Ind.Code Ann. § 34–4–20–2 (Burns 1986); Iowa Code Ann. § 614.1, subd. 11 (West Supp.1988); Ky. Rev.Stat.Ann. § 413.135(1) (Michie/Bobbs–Merrill 1972); La.Rev.Stat.Ann. § 9:2772 (West

Supp.1988); Me.Rev.Stat.Ann. tit. 14, § 752–A (1980); Md.Cts. & Jud.Proc.Code Ann. § 5–108 (1984); Mass.Ann.Laws Ch. 260, § 2B (Law Co-op.Supp.1988); Mich.Comp.Laws Ann. § 600.5839 (West 1987); Miss.Code Ann. § 15–1–41 (Supp.1988); Mo.Ann.Stat. § 516–097 (Vernon Supp.1988); Mont.Code Ann. § 27–2–208 (1983); Neb.Rev.Stat. § 25–223 (1985); Nev.Rev.Stat.Ann. § 11.205 (Michie 1986); N.H.Rev.Stat.Ann. § 508:4–b (1983); N.J. Stat.Ann. § 2A:14–1.1 (West 1987); N.M.Stat. Ann. § 37–1–27 (1978); N.C.Gen.Stat. § 1–50(5) (1983); N.D.Cent.Code § 28–01–44 (1974); Ohio Rev.Code Ann. § 2305.13.1 (Anderson 1981); Okla.Stat. tit. 12, § 109 (1981); Or.Rev.Stat. § 12.135 (1987); Pa.Cons.Stat.Ann. tit. 42, § 5536 (Purdon 1981); R.I.Gen.Laws § 9–1–29 (1985); S.C.Code Ann. §§ 15–3–640 to 670 (Law. Co-op.Supp.1987); S.D. Codified Laws Ann. §§ 15–2–9 to 12 (1984) (repealed 1985); Tenn. Code Ann. §§ 28–3–202 (1980); Utah Code Ann. § 78–12–25.5 (Supp.1987); Va.Code Ann. § 8.01–250 (1984); Wash.Rev.Code Ann. § 4.16.310 (Supp.1988); Wis.Stat.Ann. § 893.89 (West 1983); Wyo.Stat. § 1–3–111 (Supp.1987).

since the legislature's concern with shortening the lapse of time between treatment of a patient and a potential suit was a permissible legislative objective).

The Minnesota Constitution also guarantees every person a remedy in the law for all injuries or wrongs. The remedies clause states:

> Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws.

Minn. Const. art. 1, § 8. Respondents argue that Minn.Stat. § 541.051, subd. 1 (1980), deprives them of these common law rights by barring their claim against appellant, the designer and manufacturer of the crane.

Minn.Stat. § 541.051, subd. 1 (1980), does not prevent respondents from obtaining a remedy. The statute explicitly excludes from its limitation period "actions for damages resulting from negligence in the maintenance, operation or inspection of the real property improvement against the owner or other persons in possession." *Id.* Respondents may still bring an action against the owner of the property, even though the manufacturer of the crane may be excluded. Since the injured individuals were employees of the mine, there will also be workers' compensation benefits available. There is a cause of action still pending against appellant on the plaintiffs' allegations of negligent inspection. The federal district court denied summary judgment on this issue. The statute explicitly exempts owners or other persons in possession of the real property from the 15-year limitation period. It is evident the legislature has provided that a remedy will be available to injured parties under the law.

We find the legislative objective behind Minn.Stat. § 541.051, subd. 1 (1980), a legitimate one. The statutory limitation period is designed to eliminate suits against

architects, designers and contractors who have completed the work, turned the improvement to real property over to the owners, and no longer have any interest or control in it. By setting forth a 15-year period of repose, the statute helps avoid litigation and stale claims which could occur many years after an improvement to real property has been designed, manufactured and installed. The lapse of time between completion of an improvement and initiation of a suit often results in the unavailability of witnesses, memory loss and a lack of adequate records. Another problem particularly crucial is the potential application of current improved state-of-the-art standards to cases where the installation and design of an improvement took place many years ago. Minn.Stat. § 541.051 (1980) was designed to eliminate these problems by placing a finite period of time in which actions against certain parties may be brought.[7] We hold this objective is a reasonable legislative objective and should not be lightly disregarded by this court absent a clear abuse.

Certified questions answered.

---

7. Minn.Stat. § 541.051 (1980) was amended in 1986 to shorten the limitation period from 15 to 10 years. Although the 10-year period appears to be a reasonable time limit, a shorter period of time may be suspect.