## In re INDIVIDUAL 35W BRIDGE LITIGATION.

Nos. A10–0087, A10–0089, A10–0090, A10–0091.

Supreme Court of Minnesota.

Nov. 30, 2011.

David F. Herr, James Duffy O'Connor, Kirk O. Kolbo, Nicole Narotzky, Abigail Richey–Allen, Maslon Edelman Borman & Brand, LLP, Minneapolis, MN, for appellant Jacobs Engineering Group, Inc.

Lori Swanson, Attorney General, Alan I. Gilbert, Solicitor General, Kristyn Anderson, Gary Cunningham, Assistant Attorneys General, St. Paul, MN, for respondent State of Minnesota.

OPINION

DIETZEN, Justice.

This case arises out of the August 1, 2007, collapse of the Interstate 35W Bridge (Bridge) where it crosses the Mississippi River in Minneapolis, Minnesota. Following the collapse, individual plaintiffs commenced lawsuits for negligence, breach of contract, and resulting damages against URS Corporation (URS) and Progressive Contractors, Inc. (PCI), contractors that performed work on the Bridge pursuant to contracts entered into with the State of Minnesota. URS and PCI then brought third-party complaints against Jacobs Engineering Group, Inc. (Jacobs), on the basis that Jacobs' predecessor negligently designed the Bridge. PCI also filed a third-party complaint against the State. The State cross-claimed against Jacobs for contribution, indemnity, and statutory reimbursement under Minn.Stat. § 3.7394, subd. 5(a) (2010). Jacobs moved to dismiss the State's cross-claim as time-barred, arguing that neither the 2007 amendments to Minn.Stat. § 541.051 (2010) nor the reimbursement provision of the compensation statutes, Minn.Stat. § 3.7394, subd. 5(a), revived actions against Jacobs that had been previously extinguished by a prior version of the statute of repose. The district court denied the motion, and the court of appeals affirmed. Because we conclude that Minn. Stat. § 3.7394, subd. 5(a), retroactively revives the State's action for statutory reimbursement against Jacobs, that section 3.7394, subdivision 5(a), does not violate Jacobs' constitutional right to due process, and that revival of the action for statutory reimbursement does not unconstitutionally

impair Jacobs' contractual obligations, we affirm the court of appeals.

The factual background of this dispute begins with the design and construction of the Interstate 35W Bridge. In October 1962, Sverdrup & Parcel and Associates, Inc. (Sverdrup), entered into a contract with the State to prepare design and construction plans for the Bridge. The indemnity provision of the contract, Article VIII, Section 2(b), provides:

> [Sverdrup] indemnifies, saves and holds harmless the State and any agents or employees thereof from any and all claims, demands, actions or causes of action of whatsoever nature or character arising out of or by reason of the execution or performance of the work of [Sverdrup] provided for under this agreement.

Sverdrup certified the final Bridge design and construction plans in March 1965, and construction of the Bridge was substantially completed in 1967. Between 1966 and 1999, Sverdrup went through a series of name changes and mergers. In September 1999, Sverdrup Corporation merged with Jacobs, and Jacobs was the surviving corporation. Jacobs is the successor in interest to Sverdrup for the purpose of this proceeding.

In 2003, the State entered into a series of contracts with URS to conduct an inspection of the Bridge to determine the nature and scope of maintenance that needed to be performed on the Bridge. In March 2007, the State hired PCI to perform maintenance to the Bridge. On August 1, 2007, the Bridge collapsed, resulting in the deaths of 13 people and injuries to 145 others.

In 2008, the Legislature passed the compensation statutes, Minn.Stat. §§ 3.7391–.7395 (2010), to compensate survivor-claimants of the collapse.[1] Subsequently, the State entered into settlement agreements with 179 survivor-claimants who made statutory claims for compensation, paying them $36,640,000 through the compensation statutes, and $398,984 from the emergency relief fund created by the State in November 2007. The compensation statutes provide, among other things, that the State may seek reimbursement from third parties for these payments, to the extent the third party caused or contributed to the Bridge collapse. Minn.Stat. § 3.7394, subd. 5(a). All of the survivor-claimants who settled pursuant to the compensation statutes signed releases with the State.

Individual plaintiffs commenced lawsuits for negligence, breach of contract, and resulting damages against URS and PCI. The district court consolidated the individual plaintiffs' cases for pretrial purposes and dismissed the plaintiffs' breach of contract claims. URS and PCI then brought third-party complaints against Jacobs for contribution and indemnity on the basis that Sverdrup negligently designed the Bridge. PCI also filed a third-party complaint against the State. The State cross-claimed against Jacobs for common law contribution and indemnity, contractual contribution and indemnity, and statutory reimbursement pursuant to Minn.Stat. § 3.7394, subd. 5(a), to recover funds the State paid to individual survivor-claimants pursuant to the emergency relief fund and the compensation statutes.

---

1. For purposes of the compensation statutes, "survivor" is defined as "a natural person who was present on the I–35W bridge at the time of the collapse." Minn.Stat. § 3.7392, subd. 8. The definition also includes "(1) the parent or legal guardian of a survivor who is under 18 years of age; (2) a legally appointed representative of a survivor; or (3) the surviving spouse or next of kin of a deceased survivor who would be entitled to bring an action under section 573.02." *Id.*

In the consolidated proceeding, Jacobs moved to dismiss the State's cross-claims against it pursuant to Minn. R. Civ. P. 12.02(e) for failure to state a claim upon which relief can be granted. After a hearing, the district court denied Jacobs' motion to dismiss. Jacobs sought review of the district court's decision in the court of appeals.[2]

In a published opinion, the court of appeals affirmed the district court's denial of the motion to dismiss, concluding that the 2007 amendments to section 541.051 apply retroactively to revive the State's action for contractual indemnity against Jacobs,[3] and that the revival of that action did not violate Jacobs' due process rights. *In re Individual 35W Bridge Litig.*, 787 N.W.2d 643, 650–51 (Minn.App.2010). Additionally, the court concluded that the compensation statutes, Minn.Stat. §§ 3.7391–.7395, do not unconstitutionally impair Jacobs' contractual indemnity rights in violation of the U.S. and Minnesota Constitutions. 787 N.W.2d at 653. Finally, the court rejected Jacobs' claims that the releases executed by the survivor-claimants extinguished Jacobs' liability to the State, and that the State is not entitled to obtain reimbursement for its voluntary payments to the survivor-claimants. *Id.* at 653–54.

Subsequently, we granted review on all issues.

## I.

On appeal, Jacobs presents five arguments to support its position that the court of appeals erred in affirming the district court. First, Jacobs argues that the 2007 amendments to Minn.Stat. § 541.051, and the compensation statutes, Minn.Stat. §§ 3.7391–.7395, do not retroactively revive causes of action previously extinguished by the statute of repose. To address this issue, we first examine whether the 2007 amendments to Minn.Stat. § 541.051 retroactively revive a cause of action previously extinguished by the statute of repose.

■■■ We review de novo decisions on motions to dismiss for failure to state a claim upon which relief can be granted under Minn. R. Civ. P. 12.02(e). *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn.2003). The question before us is whether the complaint sets forth a legally sufficient claim for relief. *Id.* We consider only those facts alleged in the complaint, accepting those facts as true and construing all reasonable inferences in

**2.** Initially, the court of appeals questioned whether it had jurisdiction over the appeals. After informal briefing, the court dismissed the appeals without prejudice and remanded to the district court to determine the applicability of the statute of repose in section 541.051. Subsequently, the district court issued an amended order concluding, among other things, that the repose provision of section 541.051 did not bar the State's claims, and denied Jacobs' motion to dismiss. Jacobs sought review of the amended order under the collateral order doctrine. The court of appeals concluded that the portion of the amended order related to the statute of repose was appealable under the collateral order doctrine, and that other portions of the order were reviewable in the interests of justice. *See In re Individual 35W Bridge Litig.*, 786

N.W.2d 890, 893 (Minn.App.2010) (opinion on consolidated appeal); *Kastner v. Star Trails Ass'n*, 646 N.W.2d 235, 240 (Minn. 2002) (adopting collateral order doctrine).

**3.** During the pendency of the appeal, PCI and the State settled their claims against each other. *In re Individual 35W Bridge Litig.*, 787 N.W.2d 643, 646 n. 3 (Minn.App.2010). Because the State's common law causes of action for contribution and indemnity against Jacobs derived solely from PCI's claims against the State, the court of appeals concluded that those causes of action against Jacobs were no longer an issue before the court. *Id.* The State has not pursued those causes of action here, and therefore they are not before us.

favor of the non-moving party. *Id.* Moreover, interpretation of a statute is also reviewed de novo. *Zurich Am. Ins. Co. v. Bjelland,* 710 N.W.2d 64, 68 (Minn.2006). In construing the language of a statute, we give words and phrases their plain and ordinary meaning. Minn.Stat. § 645.08 (2010); *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999). Thus, if the language of a statute is clear and free from ambiguity, our role is to apply the language of the statute, and not explore the spirit or purpose of the law. Minn.Stat. § 645.16 (2010).

### A.

■ The State asserts causes of action against Jacobs for contractual indemnity[4] and for reimbursement under the compensation statutes, Minn.Stat. §§ 3.7391–.7395. Jacobs argues that the State's actions were extinguished by a prior version of the statute of repose in Minn.Stat. § 541.051, and were not retroactively revived by the 2007 amendments to the statute. According to Jacobs, the Bridge was substantially completed in 1967, and the repose period expired decades before the Bridge collapsed in 2007. The State argues that section 541.051 did not exist at the time Sverdrup and the State executed the contract in 1962, and therefore there is no statute of repose applicable to the State's action for contractual indemnity.

In a companion case, *In re Individual 35W Bridge Litigation,* 806 N.W.2d 811, 816–17, 820 (Minn.2011), we concluded that the fifteen-year repose period in the 1980 version of the statute of repose applied to similar causes of action related to the Bridge collapse, that the repose period for these causes of action expired in 1982, and that the 2007 amendments to section

541.051 do not retroactively revive these causes of action. We reasoned that the 2007 amendments do not clearly and manifestly express legislative intent to retroactively revive actions that had been previously extinguished by a statute of repose before the effective date of the amendments. *Id.* at 820. Our reasoning is equally applicable to this case, and we incorporate it herein. Thus, we conclude that the 1980 version of the statute of repose in section 541.051 was applicable to the State's action for contractual indemnity against Jacobs, and that action was extinguished in 1982, long before the effective date of the 2007 amendments. Accordingly, the State's cause of action for contractual indemnity was not revived by the 2007 amendments.

### B.

Jacobs next argues that the compensation statutes, Minn.Stat. §§ 3.7391–.7395, do not retroactively revive the State's action for statutory reimbursement against it. The State responds that section 3.7394, subdivision 5(a), was enacted by the Legislature to provide to the State the statutory right to recover payments it made to survivor-claimants from third parties that caused or contributed to the Bridge collapse, specifically reviving claims that might otherwise have been subject to repose.

The compensation statutes were enacted by the Legislature in 2008 in response to the Bridge collapse. The Legislature found that the Bridge collapse was "a catastrophe of historic proportions" in Minnesota. Minn.Stat. § 3.7391. Significantly, the Legislature deemed that it was in the public interest to establish a "compensation process" that would provide a

---

4. The State's cause of action for contractual indemnity includes the theory of contractual contribution, and is premised on the indemni-

ty clause in the 1962 contract between the State and Sverdrup. *See In re Individual 35W Bridge Litig.,* 787 N.W.2d at 647.

remedy for survivor-claimants that avoids the uncertainty of litigation "to resolve the issue of the liability of the state, a municipality, or their employees for damages incurred by survivors." *Id.*

The relevant portion of the compensation statutes is set forth in section 3.7394, subdivision 5(a). It states:

> Notwithstanding any statutory or common law to the contrary, the state is entitled to recover from any third party, including an agent, contractor, or vendor retained by the state, any payments made from the emergency relief fund or under section 3.7393 to the extent the third party caused or contributed to the catastrophe.

Minn.Stat. § 3.7394, subd. 5(a). Subdivision 5(a) unambiguously provides that the State has the right to recover payments made by the State to survivor-claimants pursuant to the compensation process from responsible third parties that caused or contributed to the Bridge collapse. Notably, the State's right to recover exists "[n]otwithstanding any statutory or common law to the contrary." Minn.Stat. § 3.7394, subd. 5(a). Thus, the question we must answer is whether the "notwithstanding" clause in subdivision 5(a) retroactively revived the State's cause of action for statutory reimbursement previously extinguished by the statute of repose in 1982.[5]

Statutes are generally not construed to apply retroactively, but this presumption may be overcome by language that "clearly and manifestly" demonstrates legislative intent that the statute apply retroactively. Minn.Stat. § 645.21 (2010). Previously, we have interpreted the phrase "notwithstanding" in Minn.Stat. § 15.99, subd. 2 (2010), to clearly express an intent to override conflicting timeline rules. *Breza v. City of Minnetrista*, 725 N.W.2d 106, 113–14 (2006). In *Breza*, the parties disputed the scope of the "notwithstanding" clause in the statute, and we concluded that the "notwithstanding" clause modified the sentence in which it was located. *Id.; see also Business Bank v. Hanson*, 769 N.W.2d 285, 289–90 (Minn.2009) (interpreting the phrase "[n]otwithstanding anything to the contrary herein," to conclude that despite provisions of the contract referencing a larger amount of money, the debt secured by the mortgage was no more than $200,000, the amount listed after the notwithstanding clause).

Similarly, in *Cisneros v. Alpine Ridge Group*, the U.S. Supreme Court concluded that the use of a " 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." 508 U.S. 10, 18, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993). Moreover, the Court cited with approval the holdings of the various United States Courts of Appeal generally interpreting "similar notwithstanding language to supersede all other laws, stating that a clearer statement is difficult to imagine." *Id.* (internal punctuation omitted).

We conclude that the "notwithstanding" clause in section 3.7394, subdivision 5(a), clearly and manifestly demonstrates legislative intent to supersede any statutory or common law that would operate to limit the State's ability to seek reimbursement from a responsible third party. Thus, we conclude that the State's right to recover

---

5. Both parties refer to the State's cause of action as a cause of action for statutory reimbursement. Strictly speaking, it is an action "to recover from any third party" payments made to survivor-claimants of the Bridge collapse. Minn.Stat. § 3.7394, subd. 5(a). For purposes of consistency, we will use the title given by the parties with the understanding that the language of the statute prevails.

against responsible third parties under section 3.7394, subdivision 5(a), retroactively revives the State's cause of action for statutory reimbursement against Jacobs that was previously extinguished by the statute of repose in section 541.051.

## II.

Second, Jacobs argues that the State's cause of action for statutory reimbursement against Jacobs under section 3.7394, subdivision 5(a), is barred by the Due Process Clauses of the U.S. and Minnesota Constitutions. Specifically, Jacobs argues that when the statute of repose expired at the latest in 1982 for causes of action related to the design or construction of the Bridge, it acquired a vested right in the defense provided by the statute of repose, and this vested right is protected by the U.S. and Minnesota Constitutions. Thus, Jacobs asserts that interpreting the compensation statutes to retroactively revive a cause of action previously extinguished by the statute of repose violates Jacobs' constitutional right to due process of law.

■■■ We review an as-applied challenge to the constitutionality of a statute de novo. *Irongate Enters., Inc. v. Cnty. of St. Louis,* 736 N.W.2d 326, 332 (Minn. 2007). We "presume statutes to be constitutional and exercise the power to declare a statute unconstitutional with extreme caution and only when absolutely necessary." *Id.* (quoting *ILHC of Eagan, LLC v. Cnty. of Dakota,* 693 N.W.2d 412, 421 (Minn.2005) (internal quotation marks omitted)). The party challenging the con-

stitutionality of a statute must demonstrate that the statute is unconstitutional beyond a reasonable doubt. *Id.*

Both the U.S. and Minnesota Constitutions provide that an individual may not be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV (stating that a state shall not "deprive any person of life, liberty, or property, without due process of law."); Minn. Const. art. I, § 7 (stating that no person shall "be deprived of life, liberty, or property without due process of law"). We have previously stated that the due process protection provided under the Minnesota Constitution is identical to the due process guaranteed under the U.S. Constitution. *Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448, 453 (Minn.1988).

■■■ Jacobs' claim rests on the theory that it has been deprived of "property" without due process of law; specifically, Jacobs asserts that the compensation statutes, as applied, violate its right to substantive due process of law.[6] To prevail on its claim, Jacobs has the burden of proving that the interest allegedly interfered with rises to the level of a constitutionally protected "liberty" or "property" interest, and that this interest has been interfered with to an extent that violates the Due Process Clause. *See AFSCME Councils v. Sundquist,* 338 N.W.2d 560, 574 (Minn.1983); *accord Reno v. Flores,* 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (noting that in a substantive due process case, the initial step is a "careful description of

**6.** Federal and Minnesota case law distinguish between due process claims based on violations of procedural or substantive due process rights. *See Boutin v. LaFleur,* 591 N.W.2d 711, 716–18 (Minn.1999) (analyzing constitutional claims under both substantive and procedural due process). Procedural due process analyzes whether fair procedures were followed when an individual is deprived of

life, liberty, or property. *See, e.g., Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Substantive due process bars "certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Boutin,* 591 N.W.2d at 716 (quoting *Zinermon,* 494 U.S. at 125, 110 S.Ct. 975).

the asserted right" to determine if the right fits within pre-existing categories); *C.O. v. Doe*, 757 N.W.2d 343, 349 (Minn. 2008) (stating that in a due process case, two inquiries are necessary, "whether the party has a protectable liberty or property interest" and "whether the procedures used were constitutionally sufficient"). When analyzing whether legislation violates substantive due process rights, we apply the rational basis test unless a fundamental right is involved.[7] *Boutin v. La-Fleur*, 591 N.W.2d 711, 717 (Minn.1999). Under the rational basis test, legislation is examined to determine whether it is rationally related to a legitimate government interest. *AFSCME*, 338 N.W.2d at 573–75.

### A.

We first examine whether Jacobs' defense provided by the statute of repose is a "property" right entitled to due process protection. Historically, courts have limited the type of property rights entitled to due process protection. For example, the U.S. Supreme Court has found protectable property rights in real property and certain categories of personal property, *see Buchanan v. Warley*, 245 U.S. 60, 74, 38 S.Ct. 16, 62 L.Ed. 149 (1917) (noting that "property" includes the item itself and the right to acquire, use, and dispose of it); and in final judgments, *Hodges v. Snyder*,

261 U.S. 600, 603, 43 S.Ct. 435, 67 L.Ed. 819 (1923) ("[T]he private right of parties which have been vested by the judgment of a court cannot be taken away by subsequent legislation, but must be thereafter enforced by the court regardless of such legislation."); but not in the defense of the statute of limitations, *Campbell v. Holt*, 115 U.S. 620, 628–299, 6 S.Ct. 209, 29 L.Ed. 483 (1885) (declining to expand the meaning of "property" in the Due Process Clause of the U.S. Constitution to include a property right in the statute of limitations defense).

Our court has observed that a protectable property right is a right that is created and defined by "existing rules or understandings that stem from an independent source, such as state law, rules or understandings that support claims of entitlement to certain benefits." *Snyder v. City of Minneapolis*, 441 N.W.2d 781, 791 (Minn.1989) (internal quotation marks omitted). For example, "vested" property rights that have "become so fixed that it would be inequitable to abrogate [the right] by retrospective regulation" may be entitled to protection. *Peterson v. City of Minneapolis*, 285 Minn. 282, 289, 173 N.W.2d 353, 357 (1969). Those rights include real property rights, *see Young v. Mall Inv. Co.*, 172 Minn. 428, 430, 215 N.W. 840, 840 (1927); certain statutory

7. Jacobs suggests that in cases involving retroactive legislation, we have replaced the rational basis test in favor of a three-factor analysis, citing *Peterson v. City of Minneapolis*, 285 Minn. 282, 173 N.W.2d 353 (1969). In *Peterson*, we concluded, among other things, that legislation retroactively replacing the law of contributory negligence with comparative negligence did not affect a vested right, and therefore the retrospective application of the statute was not unconstitutional as applied. *Id.* at 290, 173 N.W.2d at 358. In analyzing vested rights, we quoted a law review article to suggest that three factors may help determine whether a retroactive law

is constitutional: "(1) the nature and strength of the public interest served by the statute; (2) the extent to which the statute modifies or abrogates the preenactment right; and (3) the nature of the right the statute alters." *Id.* at 288, 173 N.W.2d at 357 (citing Charles B. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv. L.Rev. 692, 697 (1960)). But we did not abrogate the rational basis test to determine whether a statute violates the Due Process Clause. Consequently, we apply the rational basis test to examine Jacobs' due process claim.

rights, *Yaeger v. Delano Granite Works*, 250 Minn. 303, 307, 84 N.W.2d 363, 366 (1957) (stating that a right exists in certain portions of the workers' compensation statutes); and final judgments, *Holen v. Minneapolis–St. Paul Metro. Airports Comm'n*, 250 Minn. 130, 136, 84 N.W.2d 282, 287 (1957). But we have also concluded that there is no protectable property right in a statute of limitations defense. *Donaldson v. Chase Secs. Corp.*, 216 Minn. 269, 276–77, 13 N.W.2d 1, 5 (1943).

Jacobs relies on *Weston v. McWilliams & Assoc.*, 716 N.W.2d 634 (Minn.2006), to argue that it has a protectable property right in a statute of repose defense. In *Weston* we considered, among other things, whether the application of a statute of repose provision in Minn.Stat. § 541.051 (2002) to bar a contribution and indemnity action violated the Due Process Clauses of the U.S. and Minnesota Constitutions. 716 N.W.2d at 640. In our analysis of that issue, we recognized that there is a significant difference between a statute of limitations and a statute of repose. *Id.* at 641. Specifically, "a statute of limitations limits

the time within which a party can pursue a remedy (that is, it is a procedural limit), whereas a statute of repose limits the time within which a party can acquire a cause of action (thus it is a substantive limit)." *Id.* We concluded that "a statute of repose ... is intended to eliminate the cause of action." *Id.*

 Applying *Weston*, we conclude that when the repose period expires, a statute of repose defense ripens into a protectable property right.[8] Our conclusion rests on the premise that the statute of repose defense is a substantive limit on a cause of action. It is a defense created and defined by statute that ripened into a fixed right upon expiration of the repose period. Unlike the statute of limitations, when the repose period expires, the cause of action is extinguished before it comes into existence and prevented from accruing. Thus, a statute of repose defense is an expectancy that ripens into a protectable property right when the repose period expires and the cause of action can no longer accrue.[9] Moreover, enforcement of

8. The vast majority of states have not yet addressed the issue of whether a statute of repose creates a protectable property right. Four states that have considered this issue have concluded that the expiration of a statute of repose creates a protectable property right. *M.E.H. v. L.H.*, 177 Ill.2d 207, 226 Ill.Dec. 232, 685 N.E.2d 335, 338 (1997) (applying the rule that the expiration of the statute of limitations creates a protectable property right to conclude that the expiration of the statute of repose creates a similar right); *Harding v. K.C. Wall Prods., Inc.*, 250 Kan. 655, 831 P.2d 958, 968 (1992) ("The legislature can *not* revive a cause of action barred by a statute of repose, as such action would constitute the taking of property without due process."); *Givens v. Anchor Packing, Inc.*, 237 Neb. 565, 466 N.W.2d 771, 773–74 (1991) (concluding that the immunity granted by the expiration of a statute of repose is a property right, protected by due process of law); *Sch. Bd. of Norfolk v. U.S. Gypsum Co.*, 234 Va. 32,

360 S.E.2d 325, 328 (1987) (concluding that the rights bestowed by the expiration of the statute of repose were substantive and therefore were entitled to due process protection).

9. The concurrence of Justice Stras argues that Jacobs has no protected property interest in a statute of repose defense because the Due Process Clause of the U.S. Constitution does not recognize such an interest, and the Minnesota Constitution provides identical due process protection. Its conclusion rests on the assumption that statutes of repose and statutes of limitations "share identical qualities." This assumption is incompatible with our decision in *Weston*. Rather, in *Weston* we concluded that statutes of repose and statutes of limitations require distinct due process analyses. 716 N.W.2d at 641 ("This difference between statutes of repose and statutes of limitations is significant when either is challenged as being violative of ... due process clauses."). Significantly, in *Weston* we

the defense of the statute of repose after the repose period expires promotes the finality of claims. After a certain amount of time has passed, it is no longer equitable to require a party to litigate a stale claim. *See Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 454 (Minn.1988) (stating that the legislative objective of section 541.051 was to "avoid litigation and stale claims which could occur many years after an improvement to real property has been designed, manufactured and installed").

## B.

Having concluded that Jacobs has a protectable property right in a statute of repose defense does not end our inquiry. Rather, we must next consider whether the compensation statutes, particularly the revival of the State's claim against Jacobs, is rationally related to a legitimate governmental interest. We have not previously determined whether retroactive revival of claims extinguished by the statute of repose violates due process.

In *Weston*, we held that the statute of repose provision in section 541.051 did not violate the Due Process Clauses of the U.S. and Minnesota Constitutions. 716 N.W.2d at 644. We reasoned that the Legislature has the prerogative to extinguish a common law cause of action through expiration of a statute of repose, and that there was "a legitimate legislative objective" sufficient to support the constitutionality of the statute. *Id.* The logical corollary of *Weston* is that the Legislature

may also create an exception to the statute of repose provided there is a legitimate governmental objective to support the exception. We do not read *Weston* to foreclose this possibility.

Several federal cases support our determination.[10] *Wesley Theological Seminary v. U.S. Gypsum Co.*, 876 F.2d 119 (D.C.Cir.1989); *Shadburne–Vinton v. Dalkon Shield Claimants Trust*, 60 F.3d 1071 (4th Cir.1995). In *Wesley*, the building owner brought a suit against the manufacturer of asbestos-containing products after the owner discovered that the products were used in construction of the building. 876 F.2d at 120. The district court granted partial summary judgment for the manufacturer on the tort claim, applying the earlier version of the statute of repose to bar the claim. *Id.* at 121. Relying on existing U.S. Supreme Court precedent, the D.C. Circuit reversed, concluding that the retroactive repeal of the statute of repose did not violate due process. *Id.* at 121–23. The court reasoned that legislation that adjusts the benefits and burdens of economic life is presumed constitutional even when that legislation is applied retroactively. *Id.* at 122 (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15–16, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976)). When the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, the statute does not violate due process. *Id.* (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729–30, 104

distinguished between the effect of a statute of repose, which is substantive and eliminates a cause of action before it can accrue, and a statute of limitations, which is procedural and merely limits the time to pursue a remedy. It logically follows that the statute of repose defense, which is a substantive limit, is a protected property interest, and the statute of limitations defense, which is a procedural limit, is not. Jacobs' protectable property

interest in the statute of repose defense protects against the retroactive *imposition* of a cause of action that, as to Jacobs, did not exist after the expiration of the repose period.

**10.** Due process protection is identical under the United States and Minnesota Constitutions and therefore it is appropriate for us to consider relevant federal cases as guidance. *Sartori*, 432 N.W.2d at 453.

S.Ct. 2709, 81 L.Ed.2d 601 (1984)). We find the reasoning in *Wesley* persuasive.

Applying these principles, we conclude that the reimbursement provision of the compensation statutes satisfies the rational basis test. The legislative purposes are to establish a compensation process and provide a remedy for survivor-claimants of the Bridge collapse that avoids the uncertainty of litigation in resolving the issue of the State's liability. Minn.Stat. § 3.7391, subd. 2. The compensation statutes give the State the right to recover from a third party any payments made by the State to the extent the third party "caused or contributed" to the Bridge collapse. Minn. Stat. § 3.7394, subd. 5(a). In the compensation statutes, the Legislature attempted to balance the rights of responsible third parties and the right of the State to seek reimbursement for claims paid under the compensation process.

We recognize that Jacobs has a protectable property right in the defense of the statute of repose. But that right is not absolute and must be balanced against the State's legitimate interest in addressing a Bridge collapse that was a "catastrophe of historic proportions." Minn.Stat. § 3.7391, subd. 1. We acknowledge that it may be economically unfair to allow a cause of action previously extinguished by a statute of repose to be revived by subsequent legislation, but we find nothing in the Due Process Clause to preclude this result. The compensation statutes are narrowly targeted to contribution and indemnity causes of action against responsible third parties. In our view, the compensation statutes are rationally related to a legitimate state interest. Accordingly, we hold that the reimbursement provision of the compensation statutes, section 3.7394, subdivision 5(a), does not violate Jacobs' constitutional right to due process by retroactively reviving a cause of action previously extinguished by the statute of repose.

## III.

Third, Jacobs asserts that the statutory reimbursement provision in section 3.7394, subdivision 5(a), impairs its contractual obligations under the State's 1962 contract with Sverdrup, in violation of the U.S. and Minnesota Constitutions. Jacobs asserts it is entitled to the benefit of the State's sovereign immunity defense—namely, the anticipated right to be free from liability to the State for contribution, indemnity, or other reimbursement for tort claims, and to vicariously enjoy the defense of sovereign immunity should a plaintiff assert a tort claim against the State. Therefore, Jacobs concludes that the compensation statutes unconstitutionally impair the 1962 contract by allowing the State to pay survivor-claimants and seek statutory reimbursement, thus abrogating the sovereign immunity defense.

When the contract between the State and Sverdrup was executed in October 1962, governmental units had broad sovereign immunity from tort claims. *See Spanel v. Mounds View Sch. Dist. No. 621,* 264 Minn. 279, 293 n. 42, 118 N.W.2d 795, 803 n. 42 (1962) (discussing the broad sovereign immunity protecting the State). In December 1962, we overruled the doctrine of sovereign tort immunity as a defense to tort claims against school districts, municipal corporations, and "other subdivisions of government on whom immunity has been conferred by judicial decision." *Id.* at 292, 118 N.W.2d at 803. In 1975, we abolished the sovereign immunity of the State against tort liability for claims arising on or after August 1, 1976. *Nieting v. Blondell,* 306 Minn. 122, 132, 235 N.W.2d 597, 603 (1975).

The Legislature responded by enacting Minn.Stat. § 3.736 (1978), effective in Au-

gust 1976. Act of Apr. 20, 1976, ch. 331, § 33, 1976 Minn. Laws 1282, 1293–97, 1301 (codified at Minn.Stat. § 3.736 (1978)). Generally, this statute established that the State would compensate claimants for torts subject to certain limitations and procedures. Minn.Stat. § 3.736 (1978). The total liability of the State, or "tort cap," was set at $100,000 for a single claimant and $500,000 for any number of claims arising out of a single occurrence. *Id.,* subd. 4. Since that time, the Legislature has increased the tort cap; specifically, the limit applicable on the date of the Bridge collapse was $1 million of total liability against the State based on "any number of claims arising out of a single occurrence." Minn.Stat. § 3.736, subd. 4(e) (2010) (applicable to claims arising between January 1, 2000, and January 1, 2008).

In 2008 the Legislature added Minn. Stat. § 3.7393, subd. 11(b), which removed the $1 million tort cap for claims made by survivor-claimants of the Bridge collapse pursuant to the process set forth in the compensation statutes. Act of May 8, 2008, ch. 288, § 4, 2008 Minn. Laws 969, 971–74 (codified at Minn.Stat. § 3.7393 (2010)). Subdivision 11(b) states: "Notwithstanding section 3.736, subdivision 4, clause (e), or 466.04, subdivision 1, paragraph (a), clause (5), the $1,000,000 limitation on state or municipal liability for claims arising out of a single occurrence otherwise applicable to the [Bridge collapse] does not apply to payments made to survivors under this section." Minn.Stat. § 3.7393, subd. 11(b) (2010). Subdivision 11(b) applies to claims based on the administrative process set forth in the compensation statutes, but it does not apply to claims against the State made outside the statutory process. *See* Minn.Stat. § 3.7393, subd. 11(b) (limiting the removal of the $1 million tort cap to "payments made to survivors [of the Bridge collapse] *under this section* " (emphasis added)).

Jacobs argues that the laws in effect at the time of the 1962 contract included the State's defense of sovereign immunity against tort liability, and that defense became part of the contract. According to Jacobs, the State's decision not to assert the defense of sovereign immunity against tort liability under the compensation statutes substantially impairs its rights under the 1962 contract.

The question we must decide is whether the reimbursement provision in section 3.7394, subdivision 5(a), substantially impaired Jacobs' rights as the successor to Sverdrup by allowing the State to pay survivor-claimants and then recover a portion of those payments from Jacobs without the benefit of the sovereign immunity defense.

Both the U.S. and Minnesota Constitutions contain provisions that prohibit the government from enacting a law that impairs the obligation of contracts. U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . Law impairing the Obligation of Contracts."); Minn. Const. art. I, § 11 ("No . . . law impairing the obligation of contracts shall be passed."). In *Energy Reserves Group, Inc. v. Kan. Power & Light Co.,* the U.S. Supreme Court adopted a three-part test to evaluate whether a statute unconstitutionally impairs contractual obligations. 459 U.S. 400, 410–13, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983). First, the threshold inquiry is "whether the state law has, in fact operated as a substantial impairment of a contractual relationship." *Id.* at 411, 103 S.Ct. 697 (citing *Allied Structural Steel v. Spannaus,* 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978)). Second, the Court looked at whether the State has a "significant and legitimate public purpose behind the regulation." *Id.* (citing *U.S. Trust Co. v. New Jersey,* 431 U.S. 1, 22, 97

S.Ct. 1505, 52 L.Ed.2d 92 (1977)). Third, once a legitimate public purpose has been identified, the question is whether the adjustment of the rights and responsibilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. *Id.* at 412, 103 S.Ct. 697 (citing *U.S. Trust,* 431 U.S. at 22, 97 S.Ct. 1505). The courts defer to legislative judgment unless the State is a party to the contract affected. *Id.* at 413, 103 S.Ct. 697. When the State is a party, complete deference to the Legislature's assessment is not appropriate. *Id.* at 413 n. 14, 103 S.Ct. 697. We have adopted and applied the *Energy Reserves* test. *See Jacobsen v. Anheuser–Busch, Inc.,* 392 N.W.2d 868, 874–75 (Minn.1986); *Christensen v. Minneapolis Mun. Emps. Ret. Bd.,* 331 N.W.2d 740, 750–51 (Minn.1983).

 We conclude that Jacobs has failed to satisfy the first factor of the *Energy Reserves* test—namely, that the compensation statutes have substantially impaired its rights under the 1962 contract. Specifically, the 1962 contract does not obligate the State to assert sovereign immunity as a defense to tort claims by a plaintiff against it. Absent an affirmative obligation in the contract, there is no substantial impairment of the contract for the failure to assert an affirmative defense.

Jacobs correctly points out that existing law at the time of a contract may be incorporated into the contract. But that principle does not apply if a contrary intent is expressed. *Wm. Lindeke Land Co. v. Kalman,* 190 Minn. 601, 607, 252 N.W. 650 (1934). Here, the 1962 contract provided:

> [Sverdrup] indemnifies, saves and holds harmless the State and any agents or employees thereof from any and all claims, demands, actions or causes of action of whatsoever nature or character arising out of or by reason of the execution or performance of the work of [Sverdrup] provided for under this agreement.

The indemnity clause is very broad and does not require the State to assert sovereign immunity as a defense to claims brought against it. Rather, sovereign immunity is an affirmative defense available to the State. *See Rum River Lumber Co. v. State,* 282 N.W.2d 882, 883 n. 1 (Minn. 1979) (discussing the State's ability to pass special legislation and waive sovereign immunity for specific situations). Finally, the contract did not give Jacobs the right to challenge a decision by the State not to assert sovereign immunity.

Consequently, the compensation statutes do not result in a substantial impairment of the 1962 contract between the State and Sverdrup because the State was not contractually obligated to assert sovereign immunity as a defense to the claims of the individual plaintiffs. Because Jacobs has failed to establish the first factor of the *Energy Reserves* test, we need not address the second or third factors.

## IV.

 Fourth, Jacobs argues that the releases executed by the survivor-claimants in favor of the State are *Pierringer* releases, and thus the terms of the releases bar the State's statutory reimbursement claim against Jacobs. The practical effect of a *Pierringer* release is to dismiss the settling tortfeasor from the lawsuit and to dismiss all cross-claims for contribution between the settling defendant and the remaining defendants. *Rambaum v. Swisher,* 435 N.W.2d 19, 22 (Minn.1989). Additionally, Jacobs argues that any payments made by the State above the pre-existing statutory tort cap of $1 million were made voluntarily and in the absence of a legal duty. Therefore, the State

should not be able to obtain statutory reimbursement from Jacobs. *See Lemmer v. IDS Properties, Inc.,* 304 N.W.2d 864, 869 (Minn.1980) (discussing whether a settling party qualified as a volunteer, such that payment from a third party could not be sought).

We conclude that the "notwithstanding" clause of section 3.7394, subdivision 5(a), negates the application of both *Pierringer* principles and the voluntary payments doctrine to the State's claims for statutory reimbursement. The clause "notwithstanding any statutory or common law to the contrary," Minn.Stat. § 3.7394, subd. 5(a), plainly means that the statutory reimbursement the State may seek is not subject to general common law principles, including the limitations of *Pierringer* releases and the voluntary payments doctrine. Rather, the only limitations placed on this reimbursement provision are the constitutional limits discussed in Parts II and III and the modifier that the reimbursement is limited to the "extent the third party caused or contributed to" the Bridge collapse. Therefore, based upon the "notwithstanding" clause in section 3.7394, subdivision 5(a), we hold that the State is not barred by either *Pierringer* principles or the voluntary payments doctrine from seeking statutory reimbursement against Jacobs.

Affirmed.

GILDEA, Chief Justice (concurring).

I agree with the majority that the result below should be affirmed. But I write separately because I would not decide the question of whether Jacobs has a constitutionally protectable property interest in the statute of repose defense. I would assume, without deciding, that Jacobs has

such an interest, and hold that Jacobs' right to due process was not violated under the analysis in part II.B of the court's opinion.

STRAS, Justice (concurring).

I join the court's opinion, except for its conclusion that Jacobs has a protectable property interest in a statute of repose under the Due Process Clauses of the United States and Minnesota Constitutions. With respect to Part II of the court's opinion, therefore, I concur only in the result.

We recognized nearly 130 years ago that statutes exempting a party "from the servitude of certain forms of action" do not create vested rights. *Kipp v. Johnson,* 31 Minn. 360, 362, 17 N.W. 957, 958 (1884); *see also id.* at 363, 17 N.W. at 959 (stating that "[n]o man has a vested right to a mere remedy, or in *an exemption from it* " (emphasis added)). In *Donaldson v. Chase Securities Corp.,* we reiterated the rationale from *Kipp,* concluding that statutes of limitations "are a matter of legislative policy or expediency [that] may be changed as legislative wisdom dictates." 216 Minn. 269, 276, 13 N.W.2d 1, 5 (1943). The Supreme Court of the United States affirmed our decision in *Donaldson,* holding that, despite the running of a prior statute of limitations, the defendant "had acquired no immunity from this suit that has become a federal constitutional right." *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 316, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945). The Court explained that the protections provided by a statute of limitations continue "only by legislative grace," and "[t]heir shelter has never been regarded" as a fundamental or natural right. *Id.* at 314, 65 S.Ct. 1137.

As the court states, the scope of protection provided by the Due Process Clause of the Minnesota Constitution, Minn. Const. art. I, § 7, is identical to that pro-

vided by the Due Process Clause of the United States Constitution, U.S. Const. amend. XIV, § 1. *See Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448, 453 (Minn.1988) (addressing the constitutionality of the statute of repose in Minn.Stat. § 541.051, the same statute at issue here). Yet rather than discussing the precedent of the Supreme Court or this court, the court relies on cases from other states analyzing statutes of repose under the unique language of their own state constitutions. *See M.E.H. v. L.H.,* 177 Ill.2d 207, 226 Ill.Dec. 232, 685 N.E.2d 335, 339 (1997); *Harding v. K.C. Wall Prods., Inc.,* 250 Kan. 655, 831 P.2d 958, 967–68 (1992); *Givens v. Anchor Packing, Inc.,* 237 Neb. 565, 466 N.W.2d 771, 773–74 (1991); *Sch. Bd. of Norfolk v. U.S. Gypsum Co.,* 234 Va. 32, 360 S.E.2d 325, 327–28 (1987). Moreover, in the only one of these cases discussing federal due process principles, the Kansas Supreme Court concluded that there is *no* protectable property right in a statute of repose under the United States Constitution. *See Harding,* 831 P.2d at 967 (citing *Donaldson,* 325 U.S. at 314, 65 S.Ct. 1137). Consequently, neither Jacobs nor the court have identified a single case in which a court has held that a defendant has a protectable property interest in a statute of repose defense under the United States Constitution. That absence of authority should be fatal to Jacobs' claim.

Nonetheless, the court relies on *Weston v. McWilliams & Associates, Inc.,* 716 N.W.2d 634 (2006), in concluding that Jacobs has a protectable property right in a statute of repose defense.[1] In *Weston,* we noted that, unlike a statute of limitations, a statute of repose is a substantive limit on a cause of action. *Id.* at 641. But charac-terizing a statute as *"substantive"* no more automatically invokes *substantive* due process than characterizing a statute as *"procedural"* automatically invokes *procedural* due process. If the substantive label were significant for due process purposes, then every time the Legislature modifies or eliminates *any* cause of action, it would be necessary to scrutinize the Legislature's action for compliance with substantive due process. That, however, has never been the law in Minnesota, even though there is no question that altering or eliminating a cause of action constitutes a "substantive" change to the law.

More important, in my view, is that a statute of limitations and a statute of repose share identical qualities: they are both creatures of statute and affirmative defenses to otherwise valid causes of action. Because a statute of repose is equally the product of legislative grace, I see no reason why the rationale and result of *Donaldson* and *Kipp* do not apply to a statute of repose. Given their similar function and origin, I also do not understand why a statute of repose defense can "ripen[ ] into a fixed right," but a statute of limitations defense cannot. Other than citing to *Weston,* the court cannot provide a reason either. Accordingly, because the court's conclusion is contrary to well-settled case law in this state and other jurisdictions, I would conclude that Jacobs did not have a constitutionally-protected property interest in its statute of repose defense.

---

1. To be sure, the court also identifies the promotion of finality and the inequity of requiring a party to litigate stale claims in finding a protectable property right in a statute of repose defense. Both of these interests, however, are equally applicable to a statute of limitations defense, and indeed, the policy of avoiding stale claims through a statute of limitations was identified in *Donaldson, see* 325 U.S. at 314, 65 S.Ct. 1137, years before Minn.Stat. § 541.051 was enacted.